## NATIONAL LABOR RELATIONS BOARD v. MASON MFG. CO.

### No. 9718.

Circuit Court of Appeals, Ninth Circuit.

Feb. 13, 1942.

As Modified on Denial of Rehearing March 23, 1942.

Second Rehearing Denied April 20, 1942.

Robert B. Watts, Gen. Counsel N.L.R.B., Laurence A. Knapp, Associate Gen. Counsel, Ernest A. Gross, Associate Gen. Counsel, Bertram Edises, and Ralph Winkler, Attys., N.L.R.B., all of Washington, D.C., Charles M. Brooks, Regional Atty., N.L.R.B., of Seattle, Wash., and William R. Walsh, Regional Atty., N.L.R.B., of Los Angeles, Cal., for petitioner.

Arthur Garrett, of Los Angeles, Cal., for respondent.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

The National Labor Relations Board seeks our decree confirming its findings that respondent, Mason Manufacturing Company, had committed an unfair labor practice within Section 8(1) and 8(3) of the National Labor Relations Act, 29 U.S.C.A. § 158(1, 3), in discharging, on or about March 30, 1938, a number of its employee upholsterers formerly members of Upholsterers, Furniture, Carpet, Linoleum & Awning Workers' International Union of North America, Local No. 15, affiliated with the American Federation of Labor, and discouraging their membership in active labor organizations, including United Furniture Workers of America, Local No. 576, affiliated with the Committee for Industrial Organization, (now Congress of Industrial Organization,) and its orders that the respondent shall cease and desist from such and all other unfair labor practices and shall restore the discharged men to its employ with back pay. The facts support the Board's jurisdiction, which is not questioned.

Respondent admits that it discharged the upholsterers in its employ because they were not members of A. F. of L. Local 15. It does not contend that, in the absence of any other facts, this discharge would not constitute an unfair labor practice within the provisions of section 8(1) and 8(3) of the National Labor Relations Act. It contends and claims it has established the existence of a valid closed shop agreement with Local 15, made in October 1937, for the period of a year from October 1, 1937, whereby it was required under the provision of section 8(3) as a condition of employment of its upholsterers that they should be members of that Local. The existence of such a closed shop contract is the sole question of fact necessary for the disposition of the Board's petition.

■ In the proceeding below and in the argument here, it seems to have been assumed by both the Board and the respondent that a laborer who has membership in any labor organization, thereby designates or selects that union as his bargaining agent, and that any labor organization having in its membership a majority in a proper bargaining unit of the bargaining employer, such as the upholsterers employed by the respondent, may make a closed shop agreement with its employer. It is apparent from the words of the National Labor Relations Act that Congress did not so intend.

Section 8(3) [1] of the act providing for a closed shop does not provide that any labor organization having a majority of the employees may make such an agreement. It must be a "labor organization" which is "the representative of the employees as provided by section 9(a) [159(a) of this title]".[2] Section 9(a) makes the representatives for collective bargaining only those "designated or selected" by "the majority of the employees" for that purpose.

---

[1] "(3) By discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided*, That nothing in this Act [sections 151–166 of this title] * * * shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in this Act [sections 151–166 of this title] as an unfair labor practice) to require as a condition of employment membership therein, if such labor organization is the representative of the employees as provided in section 9(a) [159(a) of this title], in the appropriate collective bargaining unit covered by such agreement when made."

[2] "(a) Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: *Provided*, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer."

If the plain words of the section did not require it, a consideration of the many different objectives for which laborers may self organize necessitates such a construction of the two provisions. Laborers may organize for nothing more than to present grievances or to bargain for better wages or for a particular working condition, or for mutual benefits, insurance or the like.[2a] —All of which objectives may be exclusive of the closed shop. Likewise a laborer may be a member of two unions, and may designate one or the other as his collective bargaining agent for all purposes or for some such specific purpose as a closed shop. Likewise he may be a member of a union and designate the mayor of the city or the parish priest as his bargaining agent for anything but a closed shop.

Hence it is apparent that neither the Board nor the courts can take judicial notice that every labor organization is created for collective bargaining, much less that every self-organization or other union exists for collective bargaining for a closed shop.[2b]

It is therefore necessary that in proceedings before the Board the party having the burden of proof of a closed shop agreement must show either (1) that a designation or selection of the labor organization claimed to have executed the agreement as an agent to bargain generally for working conditions or specifically for a closed shop has been made by a majority of employees in an appropriate unit of employees of the bargaining employer; or (2) that the employees are members of the labor organization claimed to have executed the agreement and that the organization is so constituted as to be empowered to act as such an agent, and that it has in its membership a majority of the employees in an appropriate unit of employees of the bargaining employer. In this latter instance, by joining the labor organization, ipso facto, the laborer has "designated or selected" it to be his agent to negotiate a closed shop agreement with his employer.

In this case the burden of proving the closed shop agreement was on the respondent. It would be a sufficient disposition to find that respondent cannot rely on such an agreement because, as the evidence discloses, it has not shown either (a) that it was made with A. F. of L. Local 15, at that time agent of a majority of the respondent's upholsterers by specific designation by each upholsterer, or (b) that Local 15 was a union constituted to be an agent for its members to bargain for a closed shop, and that mere membership of a majority of respondent's upholsterers created the agency for that purpose. However, the case before the Board was disposed of on other grounds, vigorously presented here, which we now consider.

Some time between March 15 and March 30, 1938, there was a document known in the proceedings as Exhibit A, signed by respondent and a representative of Local 15, which contained a closed shop provision with respect to Local 15 and Furniture Workers' Union No. 1561 (not here concerned) as follows:

"The Company agrees to employ none but members in good standing of one or the other of the two affiliated unions, as the type of employment may determine."

The Board claimed that Exhibit A could not be a binding closed shop agreement as of March 1938, because, as admitted, Local 15 did not then have in its membership a majority of the upholsterers employed by the respondent, as required by the proviso of section 8(3). Respondent attempted to meet the contention by the claim that Exhibit A was not an agreement made in March 1938, but a mere memorandum embodying an agreement made in the previous October, when Local 15 did have such a majority. Respondent then sought to prove the agreement made in October and claimed it was expressed in a document, in contract form, Exhibit 3, prepared by Local 15 and given to the respondent. Respondent's principal witness, its president and chief executive officer, repeatedly testified, both under examination of respondent's counsel and in cross-examination, that he was acting under the provisions of the October document, Exhibit 3, in his subsequent dealings with his employees.[3]

---

[2a] Sections 1 and 7 of the National Labor Relations Act, 29 U.S.C.A. §§ 151, 157.

[2b] See statement of limitations of power of union agents to make contracts to bring back employer's proposals for acceptance by majority vote and the like, in N. L. R. B. v. Hollywood-Maxwell Co., 9 Cir., 126 F.2d 815, filed March 23, 1942.

[3] In this court the briefs of both par-

The Board met this issue with evidence that though Exhibit 3 was prepared by Local 15, it had not been signed by it and that respondent had not been shown to have accepted it as binding. The Board also contends that the clauses contained in Exhibit 3, claimed to create a closed shop, are limited to those upholsterers employed in the future and that they do not warrant the discharge of the upholsterers employed at the time the agreement was made, which latter, respondent concedes, were those discharged on March 30, 1938. The provisions read:

"The employer recognize Local 15 as the sole bargaining agency for its members in all the upholstering departments and its allied crafts.

"In the event the Union cannot furnish sufficient help when needed within two working days, the employer may advertise and hire from other sources providing those hired obtain temporary work permits from the union.

"All present employees of the employer and all employees hired in the future who have worked one week or more and who have become members of the union are steady employees. All work shall be divided among all steady employees as nearly equally as possible, regardless of seniority, in order to avoid discrimination. Where two grades of work or more than one operation prevails, said equal division shall apply in each department or operation.

"Overtime work shall be distributed among the steady employees in the shop in all operations or classifications in as nearly equal a manner as possible, except to finish out a job."

■ We sustain the Board on both contentions. The clauses of the contract relied upon by respondent do not warrant the discharge of the upholsterers, and the evidence concerning the making of the claimed agreement in October 1937 not only warrants the inference by the Board that it was not made, but would require us so to find. The Board properly held that respondent violated section 8(1) and 8(3) and that it would effectuate the policies of the National Labor Relations Act to order the reinstatement of the discharged employees with back pay.

■ With regard to the Board's cease and desist orders, we are constrained to believe they are broader than warranted by the evidence. The testimony of President Mason shows his enterprise and that of his employees, making their livelihood therefrom, was embarrassed in a jurisdictional dispute between two warring unions. It shows clearly an honest confusion as to his obligation to his employees. There is nothing to indicate a general intent to violate the National Labor Relations Act.

■ The court believes it should exercise great care in entering general cease and desist decrees in such cases as these whereby a single mistaken act on the part of the employer would, on the face of the decree, transfer from the experience, skill and knowledge of the Board future claims of violations of the Act affecting some entirely different labor organization, in an entirely different way, and place their determination in contempt proceedings in the more restricted area of evidence of court procedure.[4]

We order a decree entered in modification of the Board's orders as follows:

1. Cease and desist from:

(a) Encouraging membership in Upholsterers, Furniture, Carpet, Linoleum & Awning Workers' International Union of North America, Local No. 15, affiliated with the American Federation of Labor, or discouraging membership in United Furniture Workers of America, Local No. 576, affiliated with the Committee for Industrial Organization, by discriminating in regard to hire or tenure of employment.

2. Take the following affirmative action which the Board finds will effectuate the policies of the Act:

(a) Offer immediate reinstatement to Hazel Fonceca, William C. Fisher, Arthur E. Feather, Winona Chait, Rosalie Archambault, Lupe Tellez, Joe Leon, Russell White, Lowell E. Johnson, Jacob Levin, and Manuel Senteno, to their former or substantially equivalent positions, without prejudice to their seniority or other rights or privileges;

(b) Make whole the persons named above for any loss of pay they have suffered by reason of the respondent's dis-

---

ties cite this testimony concerning Exhibit 3 as disclosing the claimed warrant of respondent's acts.

[4] See National Labor Relations Board v. Express Publishing Co., 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930.

crimination against them, by payment to each of them of a sum of money equal to the amount he normally would have earned as wages from March 30, 1938, to the date on which the respondent offers him reinstatement, less his net earnings during said period;

(c) Post immediately notices to its employees in conspicuous places throughout its plant, and maintain such notices for a period of at least sixty (60) consecutive days from the date of posting, stating that the respondent will not engage in the practices from which it is ordered to cease and desist in the manner aforesaid, and that it will take the affirmative action set forth in 2(a) and (b) of this Order;

(d) Notify the Regional Director for the Twenty-first Region in writing within ten (10) days from the date of this Order what steps the respondent has taken to comply herewith.

Petition granted in part and denied in part.