In the Matter of the Arbitration between HAROLD LEVINSOHN CORP., Appellant, and JOINT BOARD OF CLOAK, SUIT, SKIRT AND REEFER MAKERS' UNION et al., Respondents.

First Department, April 12, 1948.

*Charles Rembar* of counsel (*Polier, Rembar & Midonick* with him on the brief; *Laxer, Shapiro & Lauter,* attorneys), for appellant.

*Morris P. Glushien* of counsel (*Abraham Schlesinger,* attorney), for respondents.

VAN VOORHIS, J. The appeal is by an employer, Harold Levinsohn Corp., from an order denying its application for a stay of an arbitration proceeding, on the main ground that no valid contract was entered into (Civ. Prac. Act, §§ 1450, 1451). Appellant is a manufacturer of men's and ladies' suits, having its principal place of business in New York City. It cuts its own fabrics, sending them to contracting firms to do the sewing work. The respondent Joint Board of Cloak, Suit, Skirt and Reefer Makers' Union of the International Ladies' Garment Workers' Union, hereinafter referred to as the Union, has made a formal demand for arbitration of a dispute arising out of

contract. The controversy is over a claim by the Union, based upon violation of a collective bargaining agreement, to damages by reason of the operation of a "non-union" factory by appellant in Red Bank, New Jersey, and by reason of appellant's having sent its cut fabrics for sewing to eight enumerated "non-union" contractors. The collective bargaining agreement defines a "union shop" as one that employs none but members in good standing of the respondent Union. The charge against appellant of maintaining a nonunion shop, and of dealing with nonunion contractors, does not mean that appellant and its contracting firms were not unionized; they had previously been organized by a rival union, the Amalgamated Clothing Workers of America.

The damages sought are claimed to have accrued under clauses in the contract providing for payment of damages to the Union in event of violation of the terms of the agreement by the employer, and, where work has been given to nonunion contractors, providing specifically for the payment of a sum which shall be sufficiently high to offset any advantage gained by appellant through such transactions, to pay the costs of any investigations made in connection therewith, to remunerate the workers of appellant's "inside shop", if it maintains one, and the workers of its regularly designated contractors or submanufacturers who have sustained damage by reason of such violations, and to pay the full amount of wages lost by "the workers" — presumably employees of contractors employing exclusively members of the Union — by reason of giving work to "non-union" contractors. The damages thus authorized are to be determined, if possible, by agreement, and, if not, are to be fixed by the arbitrator, known as the "Impartial Chairman". Sums so determined are called liquidated damages, and are to be applied toward defraying the expenses of the office of the impartial chairman, except such amounts as are collected to remunerate the workers, which sums are to be turned over to the Union.

The circumstances under which appellant, being under contract with the Amalgamated, also came to enter into a collective bargaining agreement with an affiliate of the International Ladies' Garment Workers Union, are as follows:

In February, 1946, and prior thereto, appellant was sending its cut fabrics for sewing to nine contractors in New York City, all of whom were under contract with the Amalgamated. One of these contractors was Stauber Bros. Clothing, Inc., hereinafter called Stauber. Respondent Union had, or was seeking

to acquire, a foothold in Stauber. In the early part of February, 1946, the respondent Union declared a strike against said contractor, and succeeded in being able to prevent the completion of some $50,000 of garments belonging to appellant which were being processed at that factory. On February 23, 1946, the contract in suit was signed by the respondent Union, Stauber, and the appellant, which provided that appellant and Stauber would become bound under a collective agreement with the Union containing a clause requiring appellant and Stauber to employ only members of this Union, and obligating appellant to deal only with contractors doing likewise. The said contract of February 23, 1946, further provided that in consideration thereof " the Union agrees that the workers employed by the Employers shall return to work and that the Employers' production shall continue uninterruptedly." The employees of Stauber thereupon returned to work, and presumably completed appellant's garments.

On the basis of this agreement, the respondent Union now objects to appellant's dealing with other contractors employing help who belong to the Amalgamated, and to appellant's employing members of the Amalgamated in its own factory at Red Bank, New Jersey.

Appellant seeks to stay this arbitration on the ground that the closed shop or union shop* clause in its contract with respondent Union is illegal, and that consequently there is no substantive right in existence which can entitle the Union to liquidated damages, and that the arbitration clause cannot be invoked to enforce a nonexistent right. (*Matter of Kramer & Uchitelle, Inc.*, 288 N. Y. 467; *Sanders* v. *Lowenstein & Sons, Inc.*, 264 App. Div. 367, affd. 289 N. Y. 702).

Section 8, subdivision (3), of the National Labor Relations Act (U. S. Code, tit. 29, § 158, subd. [3]) states that " It shall be an unfair labor practice for an employer * * * (3) By discrimination in regard to hire or tenure of employment or any

---

* The collective bargaining agreement uses the term "union shop". Under the definition in the agreement, this is one that "employs none but members in good standing of the Union". Such a definition appears to describe what is known as a closed shop rather than a union shop. On the other hand, since appellant and its contracting firms have already been organized by the Amalgamated, the context leaves room for the conclusion that the expressed requirements of the collective bargaining agreement would be complied with if these employees were retained, provided that within a short time they resigned from the Amalgamated and joined the respondent Union of the ILGWU. It does not affect the result in this case whether the agreement calls for a closed shop or a union shop, and no decision is now made concerning which type is designated. For that reason the terms have been used in the alternative in this opinion.

term or condition of employment to encourage or discourage membership in any labor organization: *Provided,* That nothing in sections 151-166 of this title or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization * * * to require as a condition of employment membership therein, if such labor organization is the representative of the employees as provided in section 159 (a) of this title, in the appropriate collective bargaining unit covered by such agreement when made.''

Section 159, subdivision (a), of the U. S. Code being section 9, subdivision (a), of the act, thus referred to, is the part of the act which provides for the selection of representatives for collective bargaining by the majority of the employees in a unit appropriate for such purpose as established by the National Labor Relations Board.

Neither on February 23, 1946, when said contract was entered into, nor at any other time, has the respondent Union represented appellant's workers, who were and are represented by the Amalgamated Clothing Workers of America. The effect of the contract, if carried out, would be to compel appellant to discharge its employees unless they become connected with the International Ladies' Garment Workers' Union.

The requirements of this agreement contravene the public policy expressed by section 8, subdivision (3), of the National Labor Relations Act, which makes it an unfair labor practice for appellant to require membership in the respondent Union as a condition of employment for its help, in the absence of authorization to said Union to represent these employees through the appropriate collective bargaining unit established in accordance with the National Labor Relations Act (*International Association, etc.* v. *National Labor Relations Board,* 110 F. 2d 29; *National Labor Relations Board* v. *Mason Mfg. Co.,* 126 F. 2d 810). The policy and express language of this law prevent the respondent Union from compelling appellant to engage in an unfair labor practice for the benefit of this Union. The business of appellant is interstate, but even if that were not so, the New York State Labor Relations Act contains corresponding provisions (Labor Law, §§ 700, 704, subds. 5, 10; § 705; *Association of Plumbing & Heating Contractors* v. *Merten,* 261 App. Div. 543, affd. 288 N. Y. 555).

Respondents argue that it is unknown what the appropriate bargaining unit would be, since none has been established by the National Labor Relations Board or the New York State Labor Relations Board in this instance. But this circumstance

favors appellant, since under these acts the burden of proof is cast upon the party seeking to enforce a closed shop, or union shop, to establish that the conditions precedent to its validity have been performed (*National Labor Relations Board* v. *Mason Mfg. Co., supra*). The acts having made it an unfair labor practice to discriminate in regard to hire or tenure of employment on the basis of union membership, it follows that these provisions in the agreement in suit are prima facie invalid. In seeking to compel their enforcement, the burden is upon respondent Union to justify the right which it claims to possess, to compel appellant to discharge all of its employees except those who are or who become members of respondent Union. It must show that it comes within the exception contained in the statute. The failure to show that authorization was given to the Union by appellant's employees through an appropriate bargaining unit established by the Labor Relations Board, invalidates these clauses in the contract, which would be true even if there were nothing before the court indicating that appellant had already been organized by the Amalgamated. In the absence of such authorized representation, said respondent could not compel the discharge of these employees in order to make them join said Union, even if they were not already members of a different union.

The requirement that appellant shall send its cut fabrics for sewing only to contractors who employ exclusively members of the Union, is similar in nature and closely allied to the promise by appellant not to operate any " non-union " factory itself. The object is to compel appellant to break its relations with its contractors who have been organized by the Amalgamated, unless they, in turn, break their collective bargaining agreements with the Amalgamated, and discriminate without an election under the labor relations acts in regard to the hiring of their employees on the basis of union membership. The clear purposes are both to bring about the violation of existing contractual relationships, and to exert economic pressure on contracting firms to violate the public policy of the labor relations acts by coercing them to discharge their employees unless they change their union affiliation. It is not the policy of the labor relations acts to permit appellant or these contracting firms, or their employees, to become the victims in this manner of aggressive rivalry between competing unions.

A contract to induce another to do a wrong is in itself void (*Attridge* v. *Pembroke*, 235 App. Div. 101; *Posner Co.* v. *Jackson*, 223 N. Y. 325; *Hocking Valley Ry. Co.* v. *Barbour*, 190

App. Div. 341). In the case last cited, recovery was denied on a bond, the actual purpose of which was to indemnify the plaintiff therein against loss arising from its breach of contract with another party. Although the bond did not disclose on its face that it was given for that end, the court regarded the actual situation and determined that the bond had been executed and delivered in order to induce the breach of a contract, which is a wrong. (See *Reiner* v. *North American Newspaper Alliance,* 259 N. Y. 250; *Hornstein* v. *Podwitz,* 254 N. Y. 443.)

The present controversy no longer relates to Stauber's factory, which is not enumerated among the contracting firms with which the Union now objects to appellant's doing business. The Stauber strike, by means of the ensuing agreement to which appellant as well as Stauber was required to be a party, is being used to accomplish secondary objectives that are far removed from the original dispute, which has been used to set in motion a series of events that were not involved in it, and which are outside of the spirit and the letter of the labor relations acts.

There is no occasion to decide here whether the closed shop or union shop clauses affecting appellant and its contracting firms invalidate the rest of the agreement. It is entirely possible, as the Union contends, that they do not impair the clauses establishing a retirement fund for workers who reach the age of sixty-five years, or the wage scales, or other parts of the agreement. No decision is made concerning those questions which are not relevant to the present controversy, which arises out of the provisions of the agreement requiring the employment exclusively of members of the Union by appellant and its contracting firms.

It may well be that disputes having their origin in any valid portion of the collective agreement would have to be arbitrated, but the court will not compel the arbitration of controversies arising out of void provisions in an agreement. (See *Matter of Kramer & Uchitelle, Inc.,* 288 N. Y. 467, *supra,* and *Sanders* v. *Lowenstein & Sons, Inc.,* 264 App. Div. 367, affd. 289 N. Y. 702, *supra.*)

It has been assumed that the collective agreement incorporated in the contract of February 23, 1946, between respondent Union, appellant and Stauber was actually annexed to the said contract, as respondent Union contends, and that the collective agreement is as set forth in Exhibit D printed in the record. The collective agreement has been regarded as having been intended to be made applicable to appellant, as though appel-

lant had been a member of the Merchants' Ladies Garment Association Inc., which is designated as the "Association" in said collective agreement. It has also been assumed that the impartial chairman in office pursuant to said collective agreement, in a segment of the industry organized by the International Ladies' Garment Workers' Union, would be the arbiter of this dispute, which is essentially between the International and the Amalgamated. These are the Union's contentions, which have been upheld at Special Term. It is unnecessary to pass upon them and the other points mentioned in the opinion at Special Term in view of the controlling nature of the ground on which this appeal is determined.

The record does not show that the argument made before this court, on which the illegality of the said contract depends, was made at Special Term in the same detail with which it has been addressed to this court. Nevertheless the facts on which it rests were before Special Term, and the argument of illegality is made in the affidavits, although without specific reference to the labor relations acts. Where a question of illegality is involved by reason of some violation of public policy, it is considered by an appellate court even if not raised before (*Doucet* v. *Massachusetts Bonding & Ins. Co.*, 180 App. Div. 599, 603).

The order appealed from should be reversed, with $20 costs and disbursements to the appellant and a stay of arbitration granted.

PECK, P. J., DORE, CALLAHAN and SHIENTAG, JJ., concur.

Order unanimously reversed, with $20 costs and disbursements to the appellant and a stay of arbitration granted. Settle order on notice.