In the Matter of the Arbitration between HAROLD LEVINSOHN CORP., Respondent, and JOINT BOARD OF CLOAK, SUIT, SKIRT AND REEFER MAKERS' UNION et al., Appellants.

Argued March 2, 1949; decided July 19, 1949.

*Morris P. Glushien, Emil Schlesinger* and *Willard A. Lewis* for appellants. I. The Appellate Division erred in holding that the union-shop clause was illegal. At the least, the case should have been remanded to Special Term to afford the union an opportunity to present facts relevant to the issue. (*Virginia Elec. & Power Co.* v. *National Labor Relations Bd.,* 115 F. 2d 414; *National Labor Relations Bd.* v. *McGough Bakeries Corp.,* 153 F. 2d 420.) II. The agreement must be presumed to be legal until and unless the contrary is shown in a proper proceeding. (*Lorillard* v. *Clyde,* 86 N. Y. 384; *Shedlinsky* v. *Budweiser Brewing Co.,* 163 N. Y. 437; *Meyer* v. *Price,* 250 N. Y. 370.) III. Only the National Labor Relations Board, in a proceeding before it, has jurisdiction to determine the issues under subdivision (3) of section 8 upon which petitioner asserts illegality. Until and unless there is such a board proceeding and determination, the agreement is entitled to enforcement in the courts. (*National Labor Relations Bd.* v. *Hearst Publications,* 322 U. S. 111; *Pittsburgh Plate Glass Co.* v. *National Labor Relations Bd.,* 313 U. S. 146; *May Dept. Stores Co.* v. *National Labor Relations Bd.,* 326 U. S. 376; *International Brotherhood of Teamsters* v. *International Union of United Brewery Workers,* 106 F. 2d 871; *Stone Logging & C. Co.* v. *International Woodworkers of America,* 171 Ore. 13; *Park & Tilford Import Corp.* v. *International Brotherhood,* 155 P. 2d 16.) IV. The Appellate Division erred in holding illegal the clause requiring petitioner to deal only with union contractors for the manufacture of ladies' garments. At the least, the case should have been remanded to Special Term for further evidence. (*Matter of Sun-Ray Cloak Co.,* 256 App. Div. 620; *Weitzberg* v. *Dubinsky,* 173 Misc. 350, 259 App. Div. 1008; *Sainer* v. *Affiliated Dress Manufacturers,* 168 Misc. 319; *American Cloak & Suit Manufacturers' Assn.* v. *Brooklyn Ladies' Garment Manufacturers' Assn.,* 143 Misc. 319; *Maisel* v. *Sigman,* 123 Misc. 714; *Douds* v. *Metropolitan Federation of Architects,* 75 F. Supp. 672; *Goldfinger* v. *Feintuch,* 276 N. Y. 281; *Bossert* v. *Dhuy,* 221 N. Y. 342; *Exchange Bakery & Restaurant* v. *Rifkin,* 245 N. Y. 260; *Apex Hosiery Co.* v. *Leader,* 310 U. S. 469; *May's Furs & Ready-To-Wear* v. *Bauer,* 282 N. Y. 331.)

*Charles Rembar* for respondent. I. The union-shop provision was and is violative of the National Labor Relations Act, the

New York State Constitution and the New York State Labor Relations Act and contrary to the policies therein expressed. (*International Assn. of Machinists* v. *National Labor Relations Bd.*, 110 F. 2d 29; *National Labor Relations Bd.* v. *Mason Mfg. Co.*, 126 F. 2d 810.) II. The courts of New York, in the present circumstances, should recognize the invalidity of the union-shop provision in the alleged agreement between appellants and respondent. (*Amazon Cotton Mill Co.* v. *Textile Workers Union*, 167 F. 2d 183; *Amalgamated Assn.* v. *Dixie Motor Coach Corp.*, 170 F. 2d 902.) III. The union-shop provision being invalid, the entire alleged contract is unenforcible, including the arbitration provisions and the provision that the employer shall deal only with submanufacturers who maintain union shops. (*Reiner* v. *North Amer. Newspaper Alliance*, 259 N. Y. 250; *Carmine* v. *Murphy*, 285 N. Y. 413; *Matter of Kramer & Uchitelle*, 288 N. Y. 467; *Association of Plumbing & Heating Contractors* v. *Merten*, 261 App. Div. 543, 288 N. Y. 555; *Sanders* v. *Lowenstein & Sons*, 264 App. Div. 367, 289 N. Y. 702; *International Spangles Corp.* v. *Marrow Mfg. Corp.*, 294 N. Y. 295; *Angresani* v. *Tozzi*, 217 App. Div. 642, 245 N. Y. 558; *Foley* v. *Speir*, 100 N. Y. 552; *Parthey* v. *Beyer*, 228 App. Div. 308.) IV. The fact that the contravention of the public policy embodied in the labor acts was not called to the attention of Special Term did not make the Appellate Division's consideration of the point erroneous. (*Doucet* v. *Massachusetts Bonding & Ins. Co.*, 180 App. Div. 599; *O'Mara* v. *Dentinger*, 271 App. Div. 22; *Westchester Trust Co.* v. *Harrison*, 249 App. Div. 828, 274 N. Y. 588; *Equity Service Corp.* v. *Agull*, 250 App. Div. 96; *Sprague* v. *Webb*, 168 App. Div. 292; *Barry* v. *Mulhall*, 162 App. Div. 749; *Dunham* v. *Hastings Pavement Co.*, 56 App. Div. 244; *Massachusetts Nat. Bank* v. *Shinn*, 163 N. Y. 360.)

CONWAY, J. The petitioner, Harold Levinsohn Corp. (hereinafter called petitioner or Levinsohn) seeks an order staying the arbitration of alleged violations of an agreement entered into by it on February 23, 1946. The petition in support of the motion for the stay contains the following allegations:

Prior and subsequent to February of 1946, petitioner was engaged in the manufacture and sale of *ladies' and men's suits* and maintained a factory in New York City at which it received

fabrics, which were there cut and prepared for sewing. During this period, petitioner was "in contractual relations" with Amalgamated Clothing Workers of America (hereinafter called Amalgamated) and "employed workers who were members of said union." Petitioner sent its cut fabrics to nine separate contractors in New York City who employed the necessary labor to sew and complete the garments. Each of these contractors was also "in contractual relations" with Amalgamated and "employed workers who were members" of that union. One such contractor was Stauber Bros. Clothing, Inc. (hereinafter called Stauber).

In February of 1946, at the height of petitioner's "spring season", the Joint Board of Cloak, Suit, Skirt and Reefer Makers' Union declared a strike against Stauber, preventing Stauber from completing work on $50,000 worth of garments belonging to petitioner. On the 23d of that month, an agreement was executed by and between petitioner and Stauber, and the Joint Board of Cloak, Suit, Skirt and Reefer Makers' Union (hereinafter called Union). One Harold Levinsohn, who was the president of both petitioner and Stauber, signed the agreement on their behalf. The agreement contained recitals that the "Employers" (petitioner and Stauber) were engaged in manufacturing "*ladies' suits*", that Union was composed of workers in the several branches of manufacture of such garments, that the workers in the employers' factories had stopped work and that Union was desirous that they return to work. The agreement then provided as follows: *First,* the employers agreed that they would become bound under the provisions of "the collective agreement existing in the coat and suit industry in the City of New York entered into between the Association of manufacturers and the Union", and that a "copy of the collective agreement referred to is hereunto annexed, make [*sic*] part hereof, and all of the provisions thereof are deemed incorporated herein" and that whenever the word "Association" appeared in the "annexed agreement" the word "Employer" should be substituted therefor. It was agreed that all complaints should be filed directly with the "Impartial Chairman and Arbitrator" acting under the said collective bargaining agreement. *Second,* the employers agreed that not later than May 31, 1946, they would join and become

members of one of the employer's associations of manufacturers in the coat and suit industry in New York City in contractual relations with Union. The employers agreed that they would not give any work to contractors except those in contractual relationship with Union. *Third,* Union agreed that the workers would return to work and the employers' production would continue uninterruptedly. *Fourth,* it was agreed that the employers' workers should receive a $4 weekly wage increase.

Petitioner has not made Amalgamated a party herein. It is not disputed that the workers returned to work and petitioner's garments were completed.

The petition alleged that although the contract of February 23, 1946 referred to an " alleged ' industry ' agreement as being annexed thereto, no such ' industry ' agreement was in fact annexed "; that none of petitioner's employees and none of the employees of the other eight contractors were or became members of Union; and that petitioner continued to deal with Amalgamated contractors under its original collective bargaining agreement with Amalgamated which antedated the February 23d agreement.

The petition further alleged that in June and July, 1946, conferences were held between petitioner and Union concerning petitioner's noncompliance with the agreement and its obligation to send work to Union contractors " rather than to Amalgamated contractors." After considerable discussion, during which petitioner stated that it was required to send work to Amalgamated contractors, Union suggested that it send some of its garments to shops employing Union members and petitioner " in the interests of peace " agreed to send some work to Union's shops, if Amalgamated did not object thereto. Thereafter petitioner sent work to the Amalgamated contractors and to several Union contractors.

Petitioner alleged that in December, 1946, it opened a factory in Red Bank, N. J., and its employees were members of Amalgamated and their terms and conditions of employment were fixed in a collective agreement between petitioner and Amalgamated, and that Union did not represent petitioner's employees either in the New York cutting room or in the New Jersey factory.

The petition then alleged that during the summer and fall of 1947, Union again requested that some work be sent to Union's contractors and petitioner refused. Accordingly on November 27, 1947, petitioner received a notice of hearing for arbitration of the controversy to be held before Sol A. Rosenblatt, as "Impartial Chairman". The issues which Union sought to have arbitrated and for which it sought liquidated damages were (a) the alleged violation of the February 23, 1946, agreement by petitioner in dealing with nine nonunion contractors and (b) operating a nonunion factory in Red Bank, N. J.

After alleging the above facts concerning the background of the agreement the petition then prayed that the arbitration proceeding be permanently stayed on the following three grounds:

I. That no valid agreement was ever made between the parties because (a) petitioner was not a member of any of the four manufacturers' associations under contract with Union; that no manufacturers' association was named in the agreement by whose contract petitioner was to be bound, and no copy of any such "industry" contract was attached to the agreement, and (b) even if annexed, the agreement was too vague and indefinite.

II. That Sol A. Rosenblatt was not the duly authorized arbitrator to hear and determine the controversy.

III. That Union had not complied with the provisions of the alleged agreement required of it as preliminary steps and conditions to arbitration.

In opposition to the motion Union submitted an affidavit of its general manager which treated the allegations of the petition concerning the circumstances surrounding the making of the agreement as surplusage. Accordingly the allegations of his affidavit were limited to answering the three grounds which petitioner specifically urged for a stay of the arbitration proceedings. It set forth facts to show: (1) that the "industry" contract was in fact annexed to the February 23d agreement, viz., the "industry" contract between Union and the Merchants' Ladies' Garment Association, Inc., and that the agreement between the parties was not too vague; (2) that Sol A. Rosenblatt was the duly constituted arbitrator and (3) that there was no default in conditions preliminary to the arbitration.

In a reply affidavit, while briefly stating that it was sending work to nine contractors including Stauber, all of whom were " under contract " with Amalgamated, and alleging that Union could not lawfully enter into this agreement with petitioner, petitioner reiterated the same grounds for a stay of arbitration that it urged in the petition.

Special Term rejected each of petitioner's three contentions and denied the motion for a stay. The question of the legality of the contract of February 23, 1946, was not argued or considered.

On appeal to the Appellate Division the order of Special Term was reversed and the stay granted on the ground that the contract was illegal under the National Labor Relations Act (U. S. Code, tit. 29, § 151 *et seq.*). The court assumed that Special Term's findings in upholding Union's contentions on the three issues presented by petitioner were correct and did not reach, pass on or reverse them. The order of the Appellate Division states that the reversal is " upon the law, the findings of fact below not having been considered ", and that the court " makes the findings of fact and conclusions of law as contained in the opinion of the Court". That form of reversal is one on the law alone. (Civ. Prac. Act, § 602.)

In its opinion the Appellate Division accepted the following allegations of the petition and found them as facts upon which it based its decision: Petitioner was a manufacturer of *" men's and ladies' suits "*. It cut its own fabrics and sent them to nine contractors to be sewn into garments. Petitioner and its contractors had " previously been organized by a rival union, the Amalgamated ". One of the nine contractors was Stauber. In February, 1946, Union, which was affiliated with International Ladies' Garment Workers' Union, declared a strike against Stauber, thereby preventing the completion of $50,000 worth of petitioner's garments. The strike was settled by the execution of the February 23d agreement, the workers returned to work with increased salaries and petitioner's garments were completed. Neither on February 23, 1946, when the contract was entered into, nor at any other time, did Union represent petitioner's employees who were represented by Amalgamated. The court thereupon concluded that " the effect of the contract, if carried out, would be to compel  *  *  *  [petitioner Levin-

sohn] to discharge its employees unless they became connected with the International Ladies' Garment Workers' Union." (273 App. Div. 469, 473.)

The court referred to section 8, subdivision (3), of the National Labor Relations Act (the Wagner Act, applicable here), (49 U. S. Stat. 452; U. S. Code, tit. 29, § 158, subd. [3]), which provided:

"SEC. 8. It shall be an unfair labor practice for an employer * * * (3) By discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided,* That nothing in this Act * * * or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization * * * to require as a condition of employment membership therein, *if such labor organization is the representative of the employees as provided in section 9 (a), in the appropriate collective bargaining unit covered by such agreement when made.*" (Emphasis supplied.)

Section 9 provided (49 U. S. Stat. 453; U. S. Code, tit. 29, § 159): "SEC. 9. (a) Representatives designated or selected for the purposes of collective bargaining *by the majority of the employees in a unit appropriate for such purposes,* shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment; *Provided,* That any individual employee or a group of employees shall have the right at any time to present grievances to their employer.

" (b) *The Board shall decide in each case whether,* in order to insure to employees the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the policies of this Act, *the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof.*" (Emphasis supplied.)

The court then held that the union or closed shop provision*

---

* The collective bargaining agreement uses the term "union shop", although it defines the term as a shop which "employs none but members in good standing of the Union". That definition appears to describe what is generally known as a "closed shop". However, whether the provision was for a "union shop" or a "closed shop" does not affect the result here.

of the agreement was illegal as an unfair labor practice under the act because Union did not show that a majority of petitioner's employees had authorized it to represent them through an appropriate *board designated* bargaining unit. The reasoning of the court was that all union or closed shop clauses are prima facie invalid, and the burden was upon the Union to show that authorization was given to it by a majority of petitioner's employees in a *board established* appropriate unit before petitioner could *legally* require membership in Union as a condition of employment. Stated another way, the court held that the Union shop clause was necessarily illegal until Union showed that the National Labor Relations Board had previously established the appropriate bargaining unit and that it represented a majority of petitioner's employees in the board established unit.

The court also held illegal the provision of the agreement which required petitioner to send its work to contractors employing Union members, on the ground that the provision was " similar in nature and closely allied " to the union or closed shop provision, and its object was to compel petitioner to break its relations with its contractors who had been organized by Amalgamated, unless they coerced their employees into changing their union affiliation.

The Appellate Division concluded that because the " union or closed shop " and the " union contractor " clauses were illegal, the arbitration proceedings based on those two clauses must be stayed, irrespective of other provisions of the agreement which might be valid and arbitrable.

If any presumption is to be indulged in where a formal collective bargaining agreement has been entered into, it is the ordinary presumption of legality. Nothing in the act and no authority or rule of law is called to our attention which requires us to presume that all union or closed shop provisions are prima facie illegal, so that as a condition precedent to arbitration under a collective bargaining contract, the union must show that the National Labor Relations Board has previously established the appropriate collective bargaining unit and that the union is the majority representative in such board established unit.

On the contrary, Union has presented statistics which petitioner does not dispute, indicating that there are many thousands of collective bargaining agreements containing union shop provisions and in only a small fraction has the National Labor Relations Board established the appropriate collective bargaining unit. If the interpretation below is correct, then the union and closed shop provisions in those contracts which affect countless employees are open to attack on the ground of illegality. However, the Federal courts have sustained the validity of union and closed shop clauses in many cases where a collective bargaining contract was entered into without the establishment by the board of an appropriate unit. (See *Virginia Elec. & Power Co.* v. *National Labor Relations Bd.*, 115 F. 2d 414, 419–421, revd. and remanded on other grounds *sub nom. National Labor Relations Bd.* v. *Virginia Elec. & Power Co.*, 314 U. S. 469; *National Labor Relations Bd.* v. *McGough Bakeries Corp.*, 153 F. 2d 420, 423–425; *Peninsular & Occidental S. S. Co.* v. *National Labor Relations Bd.*, 98 F. 2d 411, 412, 414, certiorari denied 305 U. S. 653; *National Labor Relations Bd.* v. *Electric Vacuum Cleaner Co.*, 120 F. 2d 611, 615–616, revd. but the Supreme Court held the original 1936 agreement valid, 315 U. S. 685, 696; *Jefferson Elec. Co.* v. *National Labor Relations Bd.*, 102 F. 2d 949, 953, 957; *M & M Wood Working Co.* v. *National Labor Relations Bd.*, 101 F. 2d 938.)

The case of *National Labor Relations Bd.* v. *Mason Mfg. Co.* (126 F. 2d 810) is not to the contrary. There the National Labor Relations Board sought a decree confirming its findings that the employer had committed an unfair labor practice within section 8, subdivision (1), and section 8, subdivision (3) of the act in discharging a number of its employees who had formerly belonged to an A.F. of L. affiliate and discouraging their membership in a C.I.O. affiliate. The employer admitted discharging the workers because they were not members of the A.F. of L. union but claimed that it was compelled to do so under a valid closed shop agreement with the A.F. of L. union. The question before the court was the existence of the closed shop contract and in that connection, it said that "*in proceedings before the Board* the party having the burden of proof of a closed shop agreement must show" designation by a majority of employees in an appropriate unit. (P. 813, emphasis supplied.) There can

be no doubt that in proceedings before the board — the agency authorized by the statute to pass upon the question of appropriate unit — a party who relies on a closed shop provision must prove to the board's satisfaction that when the contract was entered into it properly represented a majority of the employees in an appropriate unit. It is quite a different thing to say that all contracts for union or closed shops are prima facie void and can only be legal if the board has passed upon and established the appropriateness of the unit. It is not authority for the proposition that in a proceeding such as this, to stay arbitration under a formal contract providing for a union shop, that the union must show that the board has established an appropriate unit and that it represents a majority of the employees therein. Here there is no allegation that any employees enrolled in Amalgamated have been discharged, nor that their discharge has been requested, nor that Amalgamated is the selected representative of the employees as bargaining agent in an appropriate unit designated by National Labor Relations Board. The only complaint is by an employer who claims to have entered into contracts with two unions, and now wishes to avoid the second of those contracts. Whether there was a contract with Amalgamated entered into by petitioner is not shown by this record nor what it provided nor whether, if made, *it affected workers on women's garments as distinguished from men's garments*. The first two recitals of the contract of February 23, 1946, involved here read:

" WHEREAS, the Employers are engaged in manufacturing ladies' suits, and

" WHEREAS, the Union is composed of workers in the several branches of the manufacture of such garments * * *." If, as urged by Union, Amalgamated functions in the men's garment industry and Union in the women's garment industry, there is no conflict between the two contracts. Thus it cannot be said *as a matter of law* that Union's contract required petitioner's workers " to resign from Amalgamated " or that petitioner was compelled " to discharge " them.

The agreement, therefore, must be presumed to be legal until and unless the contrary is shown in a proper proceeding and such proper proceeding can be brought only before the National Labor Relations Board which has exclusive jurisdiction to decide the

underlying questions of unit and majority representation. Section 9, subdivision (b), of the act, quoted (*supra*) grants exclusive jurisdiction to the National Labor Relations Board to decide which combination of employees constitutes an appropriate unit. In *International Assn. of Machinists* v. *National Labor Relations Bd.* (110 F. 2d 29, 34) the court referred to that section of the act and said: "The power to determine appropriateness of the unit is vested in the Board, not in the employees, the trial examiner or the courts." The Federal courts have uniformly recognized that because of the complexity and difficulty of the problem of designating the *appropriate unit,* the power to make the decision has been delegated exclusively to the expert judgment of the board which has wide discretion in making the determination. (See *National Labor Relations Bd.* v. *Hearst Publications,* 322 U. S. 111, 134; *Pittsburgh Plate Glass Co.* v. *National Labor Relations Bd.,* 313 U. S. 146, 152–153; *May Dept. Stores Co.* v. *National Labor Relations Bd.,* 326 U. S. 376, 380; *Packard Motor Car Co.* v. *National Labor Relations Bd.,* 330 U. S. 485, 491–492; *National Labor Relations Bd.* v. *Botany Worsted Mills,* 133 F. 2d 876, 880; *International Assn. of Machinists* v. *National Labor Relations Bd., supra,* p. 46; *La Crosse Tel. Corp.* v. *Wisconsin Employment Relations Bd.,* 336 U. S. 18.)

The board's exclusive jurisdiction to determine whether a union represents a majority of employees in an appropriate unit has likewise been recognized. (See *Fur Workers Union, Local No. 72* v. *Fur Workers Union,* 105 F. 2d 1, 12; *International Brotherhood of Teamsters* v. *International Union of United Brewery Workers,* 106 F. 2d 871.) It follows that even where it is reasonably clear how the board will determine the issues of majority and appropriate unit that the courts are precluded from passing upon those issues because of the board's exclusive initial jurisdiction. (*International Brotherhood of Teamsters* v. *International Union of United Brewery Workers, supra,* p. 876.) Thus there is no validity in petitioner's argument that " there is not even a colorable question in the present case with respect to the appropriate bargaining unit "; that the unit is obviously " the normal unit consisting of * * * [Levinsohn's] employees "; that the board " has gone beyond the employees of a single employer very rarely "; and that there is not " the remotest possibility that the National Labor

Relations Board could arrive at a conclusion different from that of the court below.''

It may be noted that there is more than a '' colorable question '' in the present case with respect to whether Union represents a majority of employees in the appropriate unit. Petitioner Levinsohn in signing the contract as an '' Employer '' may be deemed to have conceded, at least so far as the instant proceeding is concerned, that Union was the bargaining agent of its employees and was signing the contract on their behalf. If that were not so, then there was no purpose in petitioner's being a party to the agreement as an '' Employer '' and in agreeing in the contract to grant a $4 weekly wage increase to its employees.

With respect to the appropriateness of the unit Union points out that petitioner and Stauber are affiliated corporations, as evidenced by the fact that Harold Levinsohn is president of each and that he signed the agreement on behalf of both corporations. Petitioner and Stauber were collectively designated in the agreement as '' Employers '' and both were stated to be engaged in manufacturing '' ladies' suits ''. Also, it was agreed that '' the Employers' production '' would continue uninterruptedly. That production was an entirety to which the employees of petitioner Levinsohn and Stauber by their complementary efforts contributed and made the whole. The agreement likewise grouped the workers together in stating that '' the workers in the Employers' factories have stopped work '', and that the workers of both employers were to receive a $4 weekly wage increase on their return to work. There is therefore in the record the basis for the contention by Union, and upon which it could no doubt make a fuller record in a proper proceeding before the board, that the appropriate unit consisted of *all the employees covered by the February 23d agreement*, i.e., petitioner's employees plus Stauber's employees, all of whom contributed work on the '' ladies' garments ''. It may be said both as a matter of fact and of law on this record that the Stauber employees chose Union as their bargaining representative, since the strike was settled as a result of the agreement. A fuller record may show, as Union contends, that if these shops run true to the pattern of other shops in the '' ladies' garment industry '', the sewers in Stauber's factory greatly outnumbered

the cutters in petitioner's New York City shop. (Petitioner's New Jersey factory was not opened until December, 1946, about ten months after the agreement was signed.) Thus, even if Union did not represent petitioner Levinsohn's own employees, as the Appellate Division has found,— and which Union denies — and the appropriate unit is held by the board to be the larger unit consisting of the employees of the factories of petitioner and Stauber, i.e., the employees of the employers who signed the contract, then the contract is legal, for in that unit Union may well have a majority.

Union also suggests that the board may find an association-wide unit to be appropriate, because petitioner agreed to join an industry association under contract with the Union, and it may not rely on its own breach of contract in failing to join the association as an excuse for attacking such a unit.

We need not examine further as to the possible appropriate units in which Union may have a majority. It is sufficient to point out that on this record several choices are open to the board which would result in the legality of the agreement. Until and unless the board, which has *exclusive jurisdiction* to make the determination, invalidates the agreement, the normal presumption of legality must prevail and the order below must be reversed.

In view of our conclusion that the union or closed shop provision on this record is not presumptively illegal, it follows for the same reasons that the " union contractor " clause is not presumptively illegal, and it becomes unnecessary to consider the additional grounds urged by Union for a reversal of the order below insofar as it concerns that provision.

The order of the Appellate Division should be reversed and the matter remitted to the Appellate Division for a " determination upon the questions of fact raised in that court " (Civ. Prac. Act, § 606), with costs in this court and in the Appellate Division to the appellants.

LOUGHRAN, Ch. J., LEWIS, DESMOND, DYE, FULD and BROMLEY, JJ., concur.

Order reversed, etc.