Edwabd 0. Baker, J.
Plaintiff, a manufacturer of knit goods, sues to enjoin defendant, a knit goods workers’ union (hereinafter referred to as Local 155), from picketing plaintiff’s premises. Plaintiff was incorporated in November, 1955, and shortly thereafter commenced setting up its manufacturing establishment in Brooklyn. On or about January 16, 1956, plaintiff received from the New York State Labor Relations Board a letter informing it that a petition had been filed with the board by Miscellaneous Industrial Employees Union, Local 138, A. F. of L. (hereinafter referred to as Local 138), requesting that that union be certified as the collective bargaining *659 representative for plaintiff’s production workers. On January 20,1956, a conference was held at the offices of the board among plaintiff’s representative, an examiner of the board, and two representatives of Local 138. Following this conference a “ recognition agreement ” was executed by plaintiff and Local 138, which provided, inter alia, for the withdrawal by the union of its petition previously filed and for recognition by plaintiff of Local 138 as the exclusive representative, for purposes of collective bargaining, of plaintiff’s production employees. On January 24, 1956, plaintiff and said local entered into a collective bargaining agreement covering production workers, to continue, by its terms, for a period of two years from the date thereof.
On February 14, 1956, defendant commenced picketing plaintiff’s plant. The placards carried by the pickets bore the legend “ Mighty Knitting Mills are on strike.” At Special Term, on plaintiff’s motion for an injunction pendente lite, this and certain other aspects of the picketing were held to be deceptive and misleading. However, the motion was denied upon condition that the deceptive aspects of the picketing be discontinued. Defendant thereupon substituted for the objectionable placards others bearing the following legend: ‘1 Picketing fob, Organizational Purposes — Mighty Knitting Mills is Unfair to Our Union' — Employer Claims a Labor Contract With a Distillery Workers Union' — Do Distillery Workers Produce Sweaters? — Knitgoods Workers Union Local 155, i. l. g. w. u.-a. f. of l.” The picketing has since continued. There is no evidence that it has been disorderly; nor is there proof sufficient to support a finding that, since the resumption of picketing after the temporary stay, delivery men and others have been told by the pickets that there was a strike at plaintiff’s plant, or that persons attempting to enter the plant for the purpose of delivering materials or of performing work therein have been threatened or warned of reprisals.
Plaintiff claims that the picketing is designed to induce a breach of the agreement between it and Local 138 and is therefore for an unlawful purpose; that it is violative of the right of untrammeled choice guaranteed to its employees by section 17 of article I of the New York State Constitution and section 703 of the Labor Law; that the controversy here involves no labor dispute within the meaning of section 876-a of the Civil Practice Act. Defendant insists upon its right to picket for a twofold purpose: (1) to persuade plaintiff’s employees, or persons applying for employment in the plant, to join Local 155 (2) to protest plaintiff’s alleged unfair labor practice in negotiating *660 a contract with a union not representative of employees in the knit goods industry, and at a time when plaintiff had no employees engaged in production.
The credible evidence does not support plaintiff’s claim that defendant’s activities are designed and intended to induce a breach of plaintiff’s agreement with Local 138, or to coerce recognition of defendant as the bargaining agent of plaintiff’s employees. Defendant never demanded a contract and never claimed to represent plaintiff’s employees. The proof indicates that Jacobsen, an organizer in defendant’s employer, conferred with Platnick, plaintiff’s president, early in December, 1955, while plaintiff was readying the plant for production, and requested that he be afforded an opportunity to speak with plaintiff’s employees, when production began, to persuade them to join Local 155. Platnick agreed. On several occasions thereafter, Jacobsen visited the plant and in those instances when he was successful in meeting Platnick, he was assured by the latter that he would be notified when the plant was ready for production and then would be given an opportunity to speak with the employees who were yet to be hired. Jacobsen’s final visit occurred on February 13, 1956, and on that date he was informed by Platnick that an agreement had been consummated between plaintiff and Local 138.
At the time of the execution of said agreement, plaintiff had, at most, only one employee who was assisting in setting up the plant and was not engaged in production. Any reasonable view of the evidence would seem to compel the inference that plaintiff’s negotiations with Local 138 commenced prior to the employment of any production workers, and were undertaken for the specific purpose of preventing anticipated organizational efforts by defendant union. Clearly, such conduct on the part of an employer is an unfair labor practice. (See Richer’s Bake Shop v. Sirkus, 139 N. Y. S. 2d 144.) The validity of the agreement must, nevertheless, be presumed until its nullity has been declared by the appropriate labor board (Matter of Levinson Corp. [Cloak, etc. Union], 299 N. Y. 454, 465).
However, the fact of the existence of the contract and the circumstance that it was consummated following execution, at the offices of the board and in the presence of a board official, of a recognition agreement, do not require or permit a holding that the controversy between these parties is not a labor dispute within the meaning of section 876-a of the Civil Practice Act (Wishnetzky Food Prods. v. Osman, 27 N. Y. S. 2d 750). Participation by the board’s official in the conference which resulted in the signing of the recognition agreement was not *661 tantamount to certification, by the board, of Local 138 as the bargaining representative of plaintiff’s employees. (Matter of Handi-Man Co., 5 S. L. R. B. 1171; Matter of Hill-Trandle, Inc., 15 S. L. R. B. 401.) There was no “ question or controversy concerning the representation of employees ” before the board. There was no investigation since, in the absence of such a question or controversy, there could be none under the statute (Labor Law, § 705, subd. 3). The petition filed by Local 138 was withdrawn simultaneously with the execution of the recognition agreement. There was then nothing before the board requiring the exercise of its statutory powers. Cases such as Florsheim Shoe Store Co. v. Shoe Salesmen’s Union (288 N. Y. 188) and La Manna v. O’Grady (278 App. Div. 77) are, therefore, inapposite. In Florsheim the court held (p. 197) that “ When the contract was executed by appellants and the duly certified agent of the employees and went into effect, any labor dispute within the provisions of the New York State Labor Law ended” (emphasis supplied). Similarly, in La Manna it was held that an election, conducted under the auspices of the State Labor Board at which plaintiff’s employees voted unanimously for “no union,” ended any labor dispute, and that, consequently, section 876-a of the Civil Practice Act was not a bar to the issuance of an injunction.
The controversy between the parties to this action is a labor dispute within the meaning of the statute; and this is so notwithstanding the fact that plaintiff’s employees are not members of defendant union (see Mighty Knitting Mills v. Simensky, decision of Mr. Justice Brenner on the motion for a temporary injunction, N. Y. L. J., March 12, 1956, p. 10, col. 7, and the cases there cited).
In any event, peaceful picketing for organizational purposes or for the purpose of protesting alleged unfair labor practices is an activity protected not only by the State anti-injunction statute but also by the First and Fourteenth Amendments of the Federal Constitution (Sachs Quality Furniture v. Hensley, 269 App. Div. 264 and cases there cited). There is nothing in the later cases decided by the United States Supreme Court, such as Hughes v. Superior Court (339 U. S. 460) to the contrary. The constitutional right of free speech cannot be and has not been construed so as to protect union activity conducted for an unlawful purpose, or which contravenes the reasonable public policy of a State as enunciated in its legislation or the decisions of its courts, and these eases so hold.
Plaintiff here has failed to establish by a fair weight of the evidence that the picketing, as now conducted, is for an unlawful *662 purpose, or will be so if permitted to continue. It is not the union’s purpose to induce or compel a breach by plaintiff of its subsisting contract with Local 138. The union has the right to appeal not only to workers presently employed in the plant but also to applicants for employment (James Knitting Mills v. Knitting Workers Union, N. Y. L. J., March 15, 1954, p. 12, col. 5, Keogh, J.). The evidence indicates that the purpose of the picketing is to win the support of plaintiff’s employees present and prospective, and to protest plaintiff’s alleged unfair labor practices. Both are lawful labor objectives. The fact that the picketing, at its inception, was conducted in such a manner as to be misleading and deceptive affords no basis for granting the relief sought. The rights of the parties must be determined as of the time of the trial (Chic Maid Hat Mfg. Co. v. Korba, 285 App. Div. 850). The use of the deceptive placards was discontinued following the decision of Mr. Justice Brenner. There has been substantial compliance with his suggestions or directions with respect to the content of the legends on the placards. This court is of the opinion, however, that the word “has” should be substituted for the word “claims” appearing on the placards shown in plaintiff’s Exhibit 3.
The above constitutes the decision of the court. Accordingly, judgment is directed for the defendant dismissing plaintiff’s complaint.