DeWitt C. Ward, Appellant, *v.* The Hudson River Building Company, Respondent.

Where the parties to a contract stipulate for a payment in liquidation of damages by a party in default, if the damages are in their nature uncertain and incapable of exact ascertainment, and may be dependent upon extrinsic considerations and circumstances, and the amount is not, on the face of the contract, out of all proportion to the probable loss, it will be treated as liquidated damages.

The fact that the sum so agreed to be paid is termed by the parties a "penalty," is not controlling upon the question of construction.

*It seems,* however, that when the stipulated sum is disproportionate to the presumable or probable damage, or to a readily ascertainable loss, the courts will treat it as a penalty, and will relieve on the principle that the precise sum was not the essence of the agreement, but was in the nature of security for performance.

Plaintiff contracted to erect certain houses for defendant; the contract provided that, in case of default in the completion of the work by a certain date, plaintiff, "the contractor, shall pay to the owner ten dollars for every day thereafter that the said work shall remain unfinished, as and for liquidated damages." Plaintiff failed to perform within the stipulated time, and some time after his default the parties entered into

a new agreement, which, after reciting the original contract, the failure to perform, the desire of the contractor for an extension of time, and to avoid the payment of the "penalty," and after specifying what was to be done to entitle plaintiff to a waiver of his default, contained the agreement 'that the sum or penalty" due under said contract "shall be $1,540, by way of liquidated damages," unless the work is completed by a day named. The work not having been completed on the day named, the parties entered into another agreement which recited the breach and a claim on the part of plaintiff that the ' penalty" should not be exacted, as his default was excusable, "being caused by an act of God," that is, by a severe storm. The parties agreed thereby to a settlement of all other matters, "except the one question of penalty" leaving that for litigation in case plaintiff chose to litigate the same. In an action brought to determine plaintiff's liability to pay the sum stipulated, *held*, that the sum fixed by the original contract was by way of liquidated damages, not a penalty; that plaintiff's default was not waived by the second contract, but, on the contrary, it recognized his liability therefor. Also, that, as the agreement of plaintiff was absolute and no provision was made therein against the result of an interference with its performance by an occurrence unforeseen and beyond plaintiff's control, such an occurrence was not available as a defense.

(Argued December 11. 1890; decided January 13, 1891.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made February 13, 1889, which reversed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term and granted a new trial.

The plaintiff was a contractor and builder and entered into contracts with the defendant for the erection of certain houses. By this action he seeks to be relieved from what he terms the penalty contained in his contracts, and to recover from the defendant a certain amount of money withheld by it. Each of the original building agreements contained a provision that in default of a completion of the work by a certain date mentioned "the contractor should pay to the owner ten dollars for every day thereafter that the said work shall remain unfinished, as and for liquidated damages."

The plaintiff was in default as to each contract, and on March 5, 1888, some time after the default, the parties

entered into a further agreement with respect to their matters. This latter instrument recited the making of the original contracts, the failure to complete, the desire of the contractor for an extension of time, and to avoid the payment of the penalty, and than the following agreement is inserted : " It is mutually agreed that the sum, or penalty, due under said contract on March 25, 1888, shall be $1,540 by way of liquidated damages, unless said four villas and all extra work are then entirely finished, etc." The contract specifies what further is to be done in the way of work, etc., in order to entitle Ward to a waiver on the company's part of his default and it contains a further agreement, in these words : " It is further mutually agreed that in case said Ward fails to complete said villas on or before said 25th day of March, 1888, as aforesaid, there shall be due and owing to said Hudson River Building Company, its successors or assigns, the sum of $1,540 by way of liquidated damages, etc."

When March twenty-fifth had arrived the work was still not completed, and on March thirtieth the parties again came together and entered into a further agreement. It recited the making of the previous contract of March fifth, the failure to complete, and that " the said Ward claims that notwithstanding that fact the penalty referred to in said contract should not be exacted by reason of the allegations of fact as contained in a type-written statement made by James M. Hunt and this day presented to the company, and whereas the parties hereto are willing to close all matters of differences this day, leaving the question of the said penalty for litigation, in case said Ward chooses to litigate the same, said suit to be commenced within six months from date, if at all, and the said parties reserving all other questions and property from this controversy, except the one question of penalty as alleged." The parties then proceed to state their respective agreements in relation to matters of work, liens and payments, which are not material to be particularily recited here.

The statement of Hunt, referred to as containing the plaintiff's objection to the exaction of a penalty, relates the occur-

rence of the so-called "blizzard" of March, 1888, states the consequent impossibility of proceeding with the contractor's work, argues that delay was excusable, for being caused by an act of God, and then makes demands for payments and propositions for the completion of the work, etc.

The basis for the relief demanded in the complaint is that there had been a substantial performance, and that entire performance was only prevented by an act of God, in the occurrence of the great storm known as the "blizzard," and that the work had been finished and accepted by defendant.

*James W. Hunt* for appellant. A reversal by the General Term upon the record presented upon the facts was erroneous. (*Porter* v. *Smith*, 107 N. Y. 531; *Baird* v. *Mayor, etc.*, 96 id. 567; Code Civ. Pro. § 522; *Fleischmann* v. *Stern*, 90 N. Y. 110, 114; *Dunham* v. *Cudlipp*, 94 id. 129, 134; *Davis* v. *Leopold*, 87 id. 620.) Under the facts found plaintiff is entitled to be relieved from the penalty in question. (*Bagley* v. *Peddie*, 16 N. Y. 468, 471; *Hoag* v. *McGinnis*, 25 Wend. 163; *Taylor* v. *Sandiford*, 7 Wheat. 13; *Colwell* v. *Lawrence*, 38 N. Y. 71; 3 Wait's Act. & Def. 160; *Spaulding* v. *Rosa*, 71 N. Y. 40; *Heine* v. *Meyer*, 61 id. 171; *Price* v. *Hartshorne*, 44 id. 94, 103; *Hiland* v. *Paul*, 33 Barb. 241; *Worth* v. *Edmonds*, 52 id. 40; *Merritt* v. *Earle*, 29 N. Y. 115, 116, 117; *Niblo* v. *Binsse*, 1 Keyes, 476–481.) The defendant being itself in default and unable to perform on its part, in respect to time, the terms of the agreement of March fifth, is not in a position to insist upon and exact the penalty against plaintiff. (*Hubbel* v. *Von Schoening*, 49 N. Y. 326, 331.)

*George W. Cotterill* for respondent. Assuming, for the sake of argument, the question of penalty to be in the case by any possible construction, the law declares that liquidated damages only were contemplated and agreed upon. (*Shute* v. *Hamilton*, 3 Daly, 462; *Fletcher* v. *Dyche*, 2 T. R. 36; *Duckworth* v. *Allison*, 1 M. & W. 412; *Legge* v. *Harlock*, L. R. [12 Q. B.] 1015; *Bagley* v. *Peddie*, 16 N. Y. 469.) The blizzard is no excuse in fact or law. (*Harmony* v. *Bingham*,

2 Kern. 99 ; *Tompkins* v. *Dudley*, 25 N. Y. 275 ; *Trustees, etc.*, v. *Bennett*, 3 Dutch. 514.)

GRAY, J. The appellant seeks to excuse the failure to perform his agreement and to be legally absolved from the pecuniary loss consequent thereupon, by invoking the application of an equitable rule which relieves from a penalty and from forfeiture, whenever performance has been rendered impossible by the act of God; by which expression he characterizes the storms and atmospheric disturbances, in the state of New York and elsewhere, which set in about March 12, 1888, and were popularly described as "The Blizzard." We do not think, however, that this is a case for equitable relief, or for any such application of the rule referred to. By the original contracts of the parties, default in completion of the houses, which were the subject-matter of their making, subjected the contractor to the liability to respond to the owner, in a sum measured by the number of days of default and agreed upon between them to be in liquidation of all damages. When the default occurred the new contract, which followed, did not excuse the plaintiff, or waive his default, but, on the contrary, was an agreement between the parties fixing what the amount of the sum due by way of liquidated damages would be upon a certain date, and stipulating that it should be due and owing them, if the contractor's work still remained unfinished. The last agreement has no further bearing upon this matter than to evidence the fact that the continuing default of the contractor was not excused, and that if he chose to litigate the question of an excuse by act of God, which his lawyer advanced, he was at liberty to do so. It was simply an agreement in settlement of the controversies which had arisen, but which left out of them for subsequent litigation the one question of what is there called the penalty. Whether the sum agreed between parties to be paid, in the event of a breach of some agreement is termed by them a "penalty," or "liquidated damages," is not controlling upon the question of construction. Their use of such words is not always conclusive as to their legal meaning.

To get at that we must consider the subject-matter and nature of the agreement and understand clearly the intention of the parties. If it shall then appear that the damage and loss, which may be presumed to result from non-performance, are uncertain and incapable of exact ascertainment, then the payment or liability fixed by them must be deemed to be liquidated damages and recoverable as such. ·Where, however, a sum has been stipulated as a payment by the defaulting party, which is disproportionate to the presumable or probable damage, or to a readily ascertainable loss, the courts will treat it as a penalty and will relieve; on the principle that the precise sum was not of the essence of the agreement, but was in the nature of a· security for performance. This subject has been reviewed in very many opinions; to a few of the more interesting of which, in the English reports and in those of our state, I direct attention.

In *Lowe* v. *Peers* (4 Burr. 2228, 2229), Lord MANSFIELD, and in *Kemble* v. *Farren* (6 Bing. 141), TINDAL, C. J., discuss the subject. In *Dakin* v. *Williams* (17 Wend. 447 and 22 id. 201), NELSON, Ch. J., in the first report, and Chancellor WALWORTH, in the second, review the question in the light of the English and New York cases. (See also *Hosmer* v. *True*, 19 Barb. 106; *Lampman* v. *Cochran*, 16 N. Y. 275; *Clement* v. *Cash*, 21 id. 253; *Little* v. *Banks*, 85 id. 258.)

The result of an examination of cases is to confirm the idea that it is difficult, if it is even possible, to lay down a general rule applicable to all the cases which arise, where parties have undertaken to provide against a loss consequent upon a breach of an agreement. We may, at most, say that where they have stipulated for a payment in liquidation of damages, which are in their nature uncertain and unascertainable with exactness, and may be dependent upon extrinsic considerations and circumstances, and the amount is not, on the face of the contract, out of all proportion to the probable loss, it will be treated as liquidated damages.

In this case, in the last agreement, of March thirtieth, upon which the plaintiff seems to rest, the use of the word "penalty"

does not furnish a rule for construction, and does not prevent us from inquiring into what was covered by that expression. That inquiry commences with the making of the original contracts, and extends over their execution and until the parties made their final agreement of March thirtieth. As contracts for the erection of dwelling-houses, a presumable damage would accrue from the houses not being in readiness for sale and occupation at the time fixed. What that damage would amount to was, obviously enough, incapable of exact ascertainment. But it can be readily seen that for the owner it was a matter of considerable pecuniary importance that the invested capital should be made productive from the earliest possible moment. A provision in his contract with the builder, by which the latter agrees to pay him a fixed sum as liquidated damages, in the case of non-completion by the day appointed, was as reasonable as it was quite just to both parties. So, looking at what was contemplated, what was written and what occurred in this case, I think it is evident that the use of the term liquidated damages in the original contract exactly defined what the parties must fairly have intended; namely, the payment of a certain and reasonable sum of money, which should operate to extinguish any claim of the owner for damages, by reason of the plaintiff's non-completion of the houses; that the contract, made after the default had occurred, recognized, on the contractor's part, a liability therefor, and was made for the purpose of stating the sum due and payable by him on a certain day and of opening a way for him to be forgiven its payment.

None of the features of a penal obligation are present, and the plaintiff should be held to his agreement. The damages were liquidated and the contract made no provision against the result of an interference with its performance, by the intervention of occurrences unforeseen and beyond the plaintiff's control. Having contracted absolutely to complete the houses on or before a certain date, unforeseen contingencies, no matter of what nature, are not available to plaintiff as a defense to the exaction of damages. (*Harmony* v. *Bingham*, 12 N. Y. 99; *Tompkins* v. *Dudley*, 25 id. 275; *Wheeler* v. *Ins. Co.*, 82 id. 543.)

In the view we have taken of the contracts of the parties, discussion of the other points presented by the appellant, as to admissions in the pleadings and as to whether the reversal by the General Term was justified upon the facts, is needless. The litigation was over the mooted point that the default clause in the contracts was in the nature of a penal obligation and, the performance being rendered impossible by the act of God, that the penalty could be relieved against. The trial court so found and adjudged. We have sustained the reversal at General Term, and hold that the parties had themselves fixed the damages chargeable to delay in performance of the contract, and that no legal defense existed to the exaction of the stipulated sum, by reason of the occurrence of an unforeseen contingency.

The order reversing the judgment at Special Term and ordering a new trial should be affirmed, and, under the stipulation, judgment absolute is ordered for the respondent.

All concur.

Order affirmed and judgment absolute ordered for the defendant on stipulation.