No. 9760.

CAMERON BROTHERS v. OSBORNE AS ADMINISTRATRIX.

Decided June 7, 1920.   Rehearing denied October 9, 1920.

Action by administratrix, on a contract for rental of sheep, made by defendants with her intestate. Judgment for plaintiff.

· *Affirmed.*

1. PLEADING—*Answer.*  Where the allegations of the complaint are denied, but the same matters are expressly admitted or alleged in a second defense, no issue is raised.

2. CONTRACT—*Construed.*  Where in a rental contract concerning sheep, the renters definitely, unconditionally and unqualifiedly agree to deliver to the owner a specified number of ewes at the end of the term, the fact that a number or all the ewes furnished by the owner perished through no fault of the renters, does not absolve them from their contract. This is true whether the transaction be considered a bailment or not.

3. VERDICT—*Judgment non obstante veredicto.*  The defense in this

case being insufficient in law, a verdict for defendants based · thereon, is upon immaterial issues and a judgment *non obstante veredicto* is proper.

*Error to the District Court of Bent County, Hon. A. C. McChesney, Judge.*

Mr. H. L. LUBERS, Mr. FRANK EXLINE, for plaintiffs in error.

Mr. CARLE WHITEHEAD, Mr. ALBERT L. VOGL, Mr. BERNARD J. SEEMAN, for defendant in error.

*Department Two.*

MR. JUSTICE DENISON delivered the opinion of the court.

The defendant in error was plaintiff below. She brought the action upon a ˙contract made by the defendants with her intestate. The verdict was for the defendants, but the court rendered a judgment for the plaintiff *non obstante veredicto,* for the sum of $8,479.00.

By the contract, which was dated August 31st, 1912, the defendants "rented" from D. J. Osborne, plaintiff's intestate, 4,000 breeding ewes for five years, agreeing to pay for their use "an annual rental" in kind out of their increase: "It being understood that we will maintain said herd in a fine wooled strain of breeding during the entire term, and at the end of the term will deliver to you ewes of the full number of the contract, or quality in no wise inferior to those delivered to us, and of approximately equal ages to ewes now to be received by us."

Defendants kept the sheep for more than a year and paid one year's rent. The breaches alleged were failure to pay rent, failure to deliver part of the sheep and that those returned were greatly inferior and of much less value than those delivered.

The answer admits those allegations of the complaint which are essential to a cause of action. It seems to deny failure to pay rent, failure to deliver the lost sheep and depreciation of the survivors, but all these are *expressly*

admitted or alleged in the second defense, so the denials raise no issue.

The second defense is an attempted confession and avoidance, to the following effect:   That the defendants performed the contract until about December 4th, 1913; that on that day a storm of unprecedented violence destroyed 1500 of the sheep, and so weakened the remainder, "that it was impossible and impracticable in the circumstances to breed the surviving ewes of said sheep so that they might bear a lamb crop during the year 1914 and made it impossible for the defendants * * * to perform the contract as to the payment of rental and maintaining the herd * * * to the number of 4,000 ewes or the equivalent thereof as mentioned in said contract or to any greater number than 2,507 ewes which these defendants delivered back and returned on and in December, 1913, mentioned in the complaint in this behalf," and that their treatment of the sheep was with more than ordinary care.

The reply to this defense consisted of denials only.   All other defenses were abandoned.

The only issues before the jury, then, arose out of the second defense.   If those issues were immaterial the judgment *non obstante* was right.   The question then is:   Was this second defense sufficient in law?

The defendants contend that the transaction was one of bailment for the benefit of both parties, that therefore the defendants were bound only to ordinary care, that they gave that and more and so are not liable.

The plaintiff's proposition is, among others, that even if the transaction was a bailment, the defendants, by the clause in the contract above quoted, assumed the absolute responsibility for the return of 4,000 ewes in no wise inferior to those delivered.

We think the plaintiff's proposition is manifestly right. The defendants definitely, unconditionally and unqualifiedly agreed to deliver to the plaintiff at the end of the term 4,000 ewes.   The fact that part or all of the ewes delivered

to them perished through no fault of theirs is immaterial.
It does not absolve them from their contract.

*Jones v. U. S.*, 96 U. S. 24, 29, 24 L. Ed. 644; *Day v. U. S.*,
245 U. S. 159, 161, 38 Sup. Ct. 57, 62 L. Ed. 219; *Anderson
v. May*, 50 Minn. 280, 52 N. W. 530, 17 L. R. A. 555, 36 Am.
St. Rep. 642; *Ward v. H. R. Bldg. Co.*, 125 N. Y. 230, 26 N.
E. 256; *School Dist v. Dauchy*, 25 Conn. 530, 68 Am. Dec.
371.

Such a contract is no more abrogated by misfortunes of
the promissor than a promissory note would be or a prom-
ise to deliver 100,000 bushels of wheat or 1,000 head of
cattle. *Bigler v. Hall*, 54 N. Y., 167. If the contract was
a bailment, the parties, as they lawfully might, modified
the ordinary implied liability of the bailee.

*Pope v. Farmers' Un. Co.*, 130 Calif., 139, 62 Pac. 384,
53 L. R. A. 673, 80 Am. St. Rep. 87; *Drake v. White*, 117
Mass. 10.

The authorities differ as to whether an express contract
to re-deliver a bailed chattel is avoided by inevitable acci-
dent, but here there is no such contract. The promise here
is to deliver ewes of equal quality and age, to keep it, plain-
tiffs in error must, before delivery, dispose of practically
all of the original stock. These provisions create liabilities
different from the ordinary liabilities of a bailee.

Whether, then, the transaction was a bailment or not the
terms of the contract are clear and it is the duty of the
court to enforce them.

The second defense is insufficient in law, the verdict
therefore was upon immaterial issues and the judgment
*non obstante* is right. It is also true that a verdict for the
plaintiff should have been directed for the above reasons
and for others. The amount of the judgment was the least
amount for which, under defendants' own evidence, any
verdict could have been rendered; we think, therefore, that
it was proper for the court to render judgment for that
sum.

The judgment should be affirmed.

MR. CHIEF JUSTICE GARRIGUES and MR. JUSTICE ALLEN
concur.