In the Matter of the Arbitration between PUBLISHERS' ASSOCIATION OF NEW YORK CITY, on Behalf of NEWS SYNDICATE CO., INC., Respondent, and NEWSPAPER AND MAIL DELIVERERS' UNION OF NEW YORK AND VICINITY, Appellant.

First Department, July 1, 1952.

*Stephen C. Vladeck* of counsel (*Milton Horowitz* with him on the brief; *Vladeck and Elias*, attorneys), for appellant.

*J. Howard Carter* of counsel (*Andrew L. Hughes* with him on the brief; *Townley, Updike & Carter*, attorneys), for respondent.

BERGAN, J. The question presented by this appeal is the enforcement by the judicial power of the State of a penalty imposed by arbitrators as punishment for a breach of contract. The arbitrators fixed the actual damage arising from the breach and assessed an additional amount which they denominated " punitive damages or money penalty ".

The contract pursuant to which the arbitration was had gave express authority to the arbitrators " to impose damages, money or other penalties upon any party hereto found guilty of a violation " of the agreement. The court at Special Term has entered an order and judgment in conformity with the award.

The contract is a collective bargaining agreement between the Publishers' Association of New York and the Newspaper

and Mail Deliverers' Union of New York and Vicinity, effective November 1, 1950. One of the provisions of the contract is that there shall be "No strikes, lockouts or other cessation of work" during its term. On February 14, 1951, there was a strike at the plant of the News Syndicate Co., Inc., publisher of the New York Daily News. This publisher was one of the group for whose benefit the publishers' association had made the collective bargaining agreement with the union.

This arbitration proceeding was thereupon instituted by the association for the benefit of the News, and the arbitrators, constituted in the agreement as the "Board of Adjustment", found that the union had violated the no-strike provision of the contract "by authorizing and sanctioning" the strike of February 14, 1951, and had further violated the provisions of the contract by authorizing and sanctioning "interference with work" in the News plant between February 14th and April 12th of that year.

"Actual damages" found to have arisen from these violations were fixed and awarded in the sum of $2,000. "Punitive damages" were fixed and awarded additionally in the sum of $5,000. The "punitive damages," however, were not to be payable by the union "unless and until" the adjustment board "finds or awards" that the union has "again" violated the contract, upon which finding the $5,000 shall "instantly" become payable.

The "instantly" payable obligation of the award, in turn, is to be operative only at the "option" of the News. In commenting in his opinion on this phase of the decision, the impartial chairman observed that "This suspension of the collectibility of the punitive damages" should "serve both as a warning and an inducement" to the union to conform to the contract.

In its historic conception and early formulation, the action at common law on contract not under seal had a somewhat penal cast. Assumpsit, which took form about 1500, treated the breach of the condition of a contract in the sense of a wrong, and, indeed, was itself an action in tort.

Assumpsit has been described as "an action in tort which by a stroke of genius  *  *  *  became the remedy for all contracts, whether written or verbal, other than those made under seal." (Lévy-Ullmann, The English Legal Tradition, p. 71, citing Jenks, Digest of English Civil Law [1st ed.], Book V, 1910, preface, p. xv). The theory of this and some similar civil actions, remarked Lévy-Ullmann, was "quasi-criminal". (P. 329.)

There are, or at any rate until very recently there were, vestiges of the idea of redress for wrong implicit in many plead-

ings on contract, as the survival of the word " breach " itself suggests; but no modern judge would regard damage as a punishment for breach, or as an object lesson to encourage future due performance, as an admissible basis of a judgment for nonperformance of a contract, or as constituting a statement of a good cause of action in contract.

From the very earliest stages of the action at law on contract, there has been maintained a very close correlation between the damage allowed and the actual loss to the complaining party; and the ascertainment of the loss was kept as close as it was found to be feasible to the actualities of the case.

There is more involved here than whether parties can agree between themselves on a scale of punishments to be mutually operative if they fail to carry out their contractual undertakings. There is involved also the question whether the court must impose automatically the penalties privately agreed upon; or whether in a controversy in which it would not itself grant any such relief under any circumstances, the court might reserve the right not to feel required to do so in obedience to a private contractual arrangement.

The trouble with an arbitration admitting a power to grant unlimited damages by way of punishment is that if the court treated such an award in the way arbitration awards are usually treated, and followed the award to the letter, it would amount to an unlimited draft upon judicial power. In the usual case, the court stops only to inquire if the award is authorized by the contract; is complete and final on its face; and if the proceeding was fairly conducted.

Actual damage is measurable against some objective standard — the number of pounds, or days, or gallons or yards; but punitive damages take their shape from the subjective criteria involved in attitudes toward correction and reform, and courts do not accept readily the delegation of that kind of power. Where punitive damages have been allowed for those torts which are still regarded somewhat as public penal wrongs as well as actionable private wrongs, they have had rather close judicial supervision. If the usual rules were followed there would be no effective judicial supervision over punitive awards in arbitration.

Under the terms of the contract before us, and as both parties construe it, there could be returned against either party an award for punitive damages in any amount — that could be stated in millions as well as thousands of dollars — and if the petitioner-respondent is right about the legal argument it pursues, the

court would be required unquestioningly to direct entry of its judgment for whatever amount the award states on its face. Delegation in this scope should be approached with some reservation.

In the case before us the words defining the scope of the powers of the arbitrators not only made it quite explicit that it was the intention of the contracting parties to give them the right to impose punitive damages for a breach of terms of the written agreement; but in actual operation and in the terms and effect of the award, the arbitrators allowed punitive damages, not in form merely, but actually.

As the New York contract cases are examined, it becomes apparent at once that the problem was nearly always whether the words which said "liquidated damages" or their equivalents actually meant punitive damages. There is no hesitancy observable in a very long period of consistent judicial policy in New York not to enforce that part of a contract which departed from the reasonably responsive and appropriate in damage for its breach and fixed damages by way of penalty, punishment or example. The judges took it quite for granted that if this kind of a condition became manifest and clear they would not allow damage of that kind.

The theory behind the judicial policy, so often merely implicit in judicial opinions, was expressed with a sharp clarity by Judge GRAY in *Ward* v. *Hudson Riv. Bldg. Co.* (125 N. Y. 230–235). The purpose of the court to relieve parties of stipulated penalties was that if they were disproportionate to readily ascertainable loss, the court would regard the sum stated in the contract, "not of the essence of the agreement" but "in the nature of a security for performance."

The penalty was therefore regarded as severable and not treated as damages, but as a matter collateral to the contract. This separation became the basis of the policy, upon a long line of cases cited, beginning with the judgment by Lord MANSFIELD in *Lowe* v. *Peers* (4 Burr. 2225, 2228, 2229). Judge COWEN, expressing quite a different basis of objection to exemplary damages, in *Hoag* v. *McGinnis* (22 Wend. 163) felt that the "use of penalties" as damages in the unlimited discretion of the parties would be "oppressive" (p. 166).

In many of the cases on this subject it was found by the court that the fixed damages stated to be "liquidated damages" were in fact quite appropriate to the loss from the breach. In *Curtis* v. *Van Bergh* (161 N. Y. 47) Judge VANN carefully restated the rule; but the very essence of his treatment of the subject is that

unless the damages could be found thus to be appropriate and in true proportion they would not be allowed (p. 51).

The decision at General Term in *Laurea* v. *Bernauer* (33 Hun 307) is an example of a case where the penal nature of the damage was found from the language of the agreement itself and recovery was confined to the damages actually sustained. Judge DYKMAN was of opinion that language of an agreement actually using the term " penalty " was commonly regarded by the court as conclusive in respect of its meaning (p. 309). Another example is *Caesar* v. *Rubinson* (174 N. Y. 492) which treats a deposit on rent in the nature of a penalty, waived on re-entry by the landlord. The subject is well discussed, consistently with the current of authority, in *Richards* v. *Edick* (17 Barb. 260).

The court has always regarded itself competent to inquire whether the result that arbitrators have worked out has been consistent with the public and legal policy of the community. A few examples will point the direction. An award which would sanction, under the interpretation of it given by the arbitrators, a refusal to deliver messages which would violate the Penal Law was vacated in *Matter of Western Union Tel. Co. (ACA)* (299 N. Y. 177).

Arbitration was stayed in *Matter of Levinsohn Corp. (Cloak, etc. Union)* (273 App. Div. 469) where the court was of opinion that the purpose of the contract was to break other contracts, i.e., a " purpose " to " bring about the violation of existing contractual relationships " (p. 474). Here, surely, was the imposition of judicial policy against the effectiveness of an arbitration agreement. Reversal and remission of the decision (299 N. Y. 454) turned upon a different view taken by the Court of Appeals of the merits of the question of the legality of the acts involved and not upon the power of the court to vacate an award under circumstances where the invalidity of the acts were not in doubt.

A parallel case is *Matter of Hill (Hill)* (199 Misc. 1035) where the Special Term felt that arbitration provisions of a separation agreement were not binding on the court in relation to the custody of children. In *Matter of Metro Plan, Inc.* v. *Miscione* (257 App. Div. 652) this court held that if a chattel mortgage was found to be usurious, the arbitration provisions of the contract fall. In labor arbitration agreements, it has likewise been the common practice of the court to inquire whether the damage has been liquidated and reasonably appropriate to the loss (*Matter of Mencher [Geller & Sons]*, 276 App. Div. 556; *Maisel* v. *Sigman,* 123 Misc. 714, 731).

In *Matter of Kingswood Management Corp. (Salzman)*, decided in this court in 1947 (272 App. Div. 328), an interesting light is thrown on the question of judicial policy affecting the right to arbitration. There, a cause of action for treble damages and for attorneys' fees for violation. of a price control act created by statute, to be prosecuted in any court of competent jurisdiction, was held not the proper subject for determination by arbitration because where a remedy is given by statute for violation of a right created by the same statute, the remedy given was regarded as exclusive. The intervention of a strong public policy may sometimes put an end entirely to the arbitrable nature of the dispute so that it is no longer deemed a "controversy" arising out of contract, as in the case of the insinuation of the price administrator's order into the price arrangements of the parties. (*Matter of Kramer & Uchitelle, Inc.*, 288 N. Y. 467).

In reading *Matter of Marchant* v. *Mead-Morrison Mfg. Co.* (252 N. Y. 284) where the arbitrators, having powers to deal with the construction, the terms and the performance of a contract, were excluded from allowing consequential damages which otherwise might seem proper enough, a compelling inference must be drawn that on the question of the scope of their powers in respect of the measure of damage, arbitrators are held closely, not only to the language of the contract under which they function, but to a consistency with general legal rules in respect of damage.

The classic statement of Judge CARDOZO in *Loucks* v. *Standard Oil Co.* (224 N. Y. 99, 112) that "We have no public policy that prohibits exemplary damages or civil penalties" is pressed upon us. It would require violent separation, text from context, to bring about an apposite employment of those words to this case. The court was there dealing with a cause of action in tort which arose in Massachusetts and was considering the effect of the application of exemplary damages allowable under Massachusetts law in an action prosecuted in New York.

New York has, of course, allowed punitive damages for a few willful or wanton torts. But neither the Legislature nor the judges have ever given any legal sanction to the enforcement according to the tenor of its terms of any contractual undertaking calling for damages for actual loss due to a breach, and beyond that an entirely separate, additional and unlimited measure of damage directed solely toward punishment for the same breach.

It has been seen that in an action at law the court would not send any such agreed measure of damage to a jury. The court would rule that in such a case it would allow the actual, but not the punitive, measure; and the test for statutory arbitration is a controversy which " may be the subject of an action." (Civ. Prac. Act, § 1448). This definition sweeps in " a written labor contract " which is " likewise " valid and enforcible.

We are of opinion that the penalty provision of the contract is unenforcible under any admissible theory under our law even though a separable finding of actual damage for breach could be made. The general rule that arbitrators are not bound by technical rules of law, and under a broad enough submission may interpret law as well as fact, is no adequate answer to this kind of legal infirmity which attaches itself to the nature of the submission itself. The court will not lend its power to the enforcement of the kind of a decision in arbitration which it would neither allow nor enforce as the subject of an action maintained before it directly. We do not read the words " must grant " in section 1461 of the Civil Practice Act as requiring the court to confirm in its entirety the award before us when article 84 of the statute is read in full context.

The form of this award in respect of its punitive damages also is such that it is not final and definite within subdivision 4 of section 1462 of the Civil Practice Act and this would require in any event that the award be vacated. To make operative the $5,000 punitive part of the award, three additional events, each uncertain and unpredictable, must conjoin at some indefinite future time; (a) there must be a new violation of the contract by the Union; (b) there must be a finding of a new violation by the Adjustment Board; and (c) the News must exercise an " option " to make the punitive damages effective. This is neither final nor definite.

In vacating part of the award, however, our decision is based on the broader ground that the allowance of punitive damages is not enforcible with the aid of the judicial power, rather than on the absence of finality under the form of the award.

Nothing in this opinion is inconsistent with the holding by the court in *Matter of East India Trading Co. (Halari)* (280 App. Div. 420) where, upon the facts, the court found that no penalty as such was imposed.

The order entered February 19, 1952, and the order and judgment entered March 12, 1952, should be modified by reversing so much thereof as confirms the award for $5,000 punitive dam-

ages and by vacating such part of the award, and, as so modified, the order and the order and judgment so appealed from should be affirmed, with costs to the appellant.

CALLAHAN and HEFFERNAN, JJ. (dissenting). We are in accord with the views expressed by the Special Term as to the enforcibility of the provisions of the collective bargaining agreement permitting the Adjustment Board presided over by an Impartial Chairman as arbitrators to impose " damages, money or other penalties " for breaches of said agreement. We construe such provision to be no broader than one permitting the assessment of punitive damages. Neither such a contractual provision nor the awarded penalty of $5,000 imposed tentatively as a deterrent against future violations of the collective bargaining agreement would seem to conflict with the public policy of the State (*Loucks* v. *Standard Oil Co.*, 224 N. Y. 99; *Matter of Mencher* [*Geller & Sons*] 276 App. Div. 556; *Matter of East India Trading Co.* [*Halari*], 280 App. Div. 420; Civ. Prac. Act, §§ 1448, 1462). We see no adequate reason why this court should decline to affirm such award.

The collective bargaining agreement is one between a publishers' association and a union of newspaper employees covering labor relations in this industry in New York City. Its life was to be a period of two years, and it provided for the rights of the parties in great detail, including services of an Adjustment Board with its Impartial Chairman, who were charged with seeing that the agreement was fulfilled and industrial peace maintained. The chairman was expressly empowered " to hear and determine all questions that may arise with respect to the interpretation or application of any of the provisions " of the agreement, and the board was authorized to take any action which it might deem necessary or proper to make effective the provisions and intent of the agreement and safeguard the rights of the parties, including the power " to impose damages, money or other penalties " upon any party found guilty of a violation of the agreement.

There is no dispute that during the life of the agreement the union violated the same by calling a strike, which the Adjustment Board found violated section 16P of the agreement prohibiting any strike other than one against a party failing to comply with an order of said Adjustment Board. An award of $2,000 actual damages was made to the newspaper involved, and $5,000 conditional punitive damages were also awarded to be payable only when and if the union again violated section 16P.

The parties had agreed that this decision was to control the decision of the claims of other newspapers as to their right to redress for identical strikes against them.

Special Term confirmed the award both as to the compensatory and punitive damages. The sole question presented on this appeal is the enforcibility by the court of that part of the award providing for the $5,000 penalty or punitive damages. It seems to us that only two points require consideration: (1) as to whether the contract provisions for and the award of a penalty or punitive damages should be refused enforcement by the courts as against public policy, and (2) whether the award is sufficiently mutual, final and definite to justify enforcement by judgment.

The majority view appears to be that the courts will decline to enforce the penalty provision, because it would not allow or enforce such provision in an action at law for breach of the contract maintained before the court directly.

It seems to us that this adopts too narrow a view of the court's duty in this matter.

We are dealing with an award in arbitration as to which the legal rules of damage have no application. Arbitrators are not bound to recognize the distinction made by the courts as to the damages properly awarded in actions in contract as distinguished from those in tort.

It would serve little purpose to discuss at length the historical background of the rules applied by the courts as to the proper measure of damages in actions at law for breach of contract. We agree that in actions at law the penalty imposed by the arbitrators here would not be assessed. But the rules limiting damages in civil actions grow out of judicial interpretation. Arbitrators have no rule of *stare decisis*. One of these judicial rules affecting damages is that punitive damage is not to be allowed for breach of contract. Even this rule has had an exception in actions for breach of contract to marry. It does not follow that such a rule of law as to plenary actions establishes a rule of public policy limiting the power of an arbitrator. It is just as much the public policy of this State that arbitration awards within the limit of the submission are not to be impeached for misconception of the law (*Matter of Marchant* v. *Mead-Morris Mfg. Co.*, 252 N. Y. 284, 302). Historically, the amount or nature of the damage to be awarded even in cases of breach of contract was first considered to be solely the affair of the jury, and the courts were reluctant to interfere with the punishment imposed (1 Sedgwick on Damages, [9th ed.],

§§ 347–352, 370). The courts from time to time and step by step narrowed this rule, including a restriction against punitive damages for a breach of contract. But, as we have noted, in arbitration the interpretation of the law as well as the facts is for the arbitrators, and they are limited solely by the extent of their jurisdiction under the submission and against an award that would offend the public policy of the State. An award that might contravene the penal laws of the State is an example of one that might offend our public policy (*Matter of Western Union Tel. Co.* [*ACA*], 299 N. Y. 177).

There would appear to be no such offense where arbitrators within the power expressly conferred by the parties impose a contingent penalty of $5,000 to deter unwarranted industrial warfare in the future. In fact, it would seem to us that the public policy is as much, if not more, concerned with the maintenance of industrial peace as it is with the inflexibility of any judge-made rule of damages in contract actions brought in the courts. The collective bargaining agreement here concerns complex relations of employer and employee, and not a casual conflict between buyer and seller over how much one should pay to the other for violating a contract of sale. The parties by their voluntary agreement charged the arbitrators with the duty of maintaining the integrity of their contract and peace in the industry, and gave them the broadest power of action in accomplishing this end, including the right to impose penalties. The tentative penalty or fine of $5,000 in the event of recurrence of an improper act might well be found by those charged with such duty as the one sure way of maintaining observance of the collective bargaining agreement. It seems to us that the courts should not decline to enforce such a penalty on any theory or ground that it calls upon the judicial branch of the Government or approval of an act offending its sense of propriety.

The Legislature of the State has determined the validity of a contract to arbitrate, except as to certain instances not relevant here (Civ. Prac. Act, § 1448). It has directed that the courts must confirm and enforce an award, unless it is vacated upon certain grounds of illegality specifically enumerated in the statute (Civ. Prac. Act, § 1462). No ground of excessive or improper damage is specified as a basis for vacating an award.

We consider it our duty to follow the legislative directive and confirm the award so long as the arbitrators kept within the limit of their conferred powers, even though a court might not award damages in the same amount or of the same nature in

an action at law. We are not faced with any situation where there has been the imposition of confiscatory or oppressive damages by way of unwarranted penalties fixed in the millions instead of the thousands. Thus, we find that there has not been imposed any unlimited draft upon the judicial power. When an occasion arises that the penalty is so oppressive as to offend our sense of public justice to enforce it, then it will be time enough to consider the question of the extent of our right to refuse to do so.

The duty of the court in respect to confirming and enforcing arbitrators' awards is prescribed by statute, and we may not lightly disregard the statutory mandates upon any theory of separation of powers. At least, we may not do so in this particular case where its confirmation of the award would so little offend any exercise of the judicial power.

As to the second question concerning the finality, definiteness and mutuality of the award, we are of the opinion that it is enforcible. This award specifically states the conditions under which the $5,000 becomes payable. There is nothing more for the arbitrators to do except to say that there has been a recurrence of a strike in violation of section 16P. Thus the strike that already occurred defines the event, the recurrence of which makes the penalty payable. In any event, it would seem to us that the union is not aggrieved if payment of a sum is postponed, when it might have been presently required.

Accordingly, we dissent and vote to affirm the order and judgment confirming the award.

COHN, J. P., and VAN VOORHIS, J., concur with BERGAN, J.; CALLAHAN and HEFFERNAN, JJ., dissent and vote to affirm, in opinion.

Order entered February 19, 1952, and the order and judgment entered March 12, 1952, modified by reversing so much thereof as confirms the award for $5,000 punitive damages and by vacating such part of the award and, as so modified, affirmed with costs to the appellant. Settle order on notice.