305 N.Y. 866 (1953)
In the Matter of the Arbitration between East India Trading Co., Inc., Respondent, and Dada Haji Ebrahim Halari, Appellant.
Court of Appeals of the State of New York.
Argued May 27, 1953.
Decided July 14, 1953
Granville Whittlesey, Jr., for appellant.
Martin H. Selman for respondent.
Concur: LEWIS, Ch. J., DESMOND, DYE and FULD, JJ. VAN VOORHIS, J., dissents in opinion in which CONWAY and FROESSEL, JJ., concur.
Judgment affirmed, with costs; no opinion.
VAN VOORHIS, J. (dissenting).
The question presented by this appeal is whether an arbitration award shall be confirmed, insofar as it grants what it describes as a penalty. The controversy arises from a contract for the sale of pepper, petitioner-respondent's contention being that appellant failed to deliver pepper called for by the contract, which contained a clause incorporating a trade association rule that in case of default, "Arbitrators shall determine the difference between the contract price and the market value on the day of default, such difference to be payable to the Seller or to the Buyer, as the case may be, within 10 days from the date of the Arbitration Award. The defaulting party shall pay a penalty, as determined by arbitration, of not less than 2% and not more than 10% of the market value established as of the date of the default." (Italics supplied.)
The majority opinion, at the Appellate Division, states that the provision in the contract for a penalty may have been inserted for the reason that the difference between the contract price and the market price does not always reflect the full measure of damage. Also, it was pointed out that judicial notice can be taken of the expense of litigation and the inadequacy of ordinary costs. Therefore it is indicated that this item may be liquidated damages instead of a penalty.
Analysis of this clause demonstrates, however, that the item in question is not related by the terms of the contract to extra damage or litigation expenses. The arbitrators are not given discretion to omit such an item if they decide that loss or expense of that nature has not occurred, but it is mandatory upon them to award at least 2%. The clause states that "The defaulting party shall pay a penalty * * * of not less than 2% and not more than 10% of the market value established as of the date of the default." (Italics supplied.) Furthermore, the percentage is directed to be computed, not upon the damage measured by appreciation in the market value above the contract price, but *869 upon the market value alone on the day of default. These features render the percentage provision unenforcible, as is hereafter shown. No criterion is established, no relationship is created between the extra amount which may be awarded by the arbitrators and any loss or expense incurred by the party claiming a default. That makes it a penalty in fact as well as in name.
The arbitrators fixed the percentage at the minimum permitted by the clause in the contract. It cannot be known whether, if they had been granted the discretion, they would have eliminated this extra item altogether. The language of the contract required them to grant an additional sum of at least 2% of the market value, regardless of whether the balance of the award compensated the purchaser for all damage suffered. Moreover, in directing that the amount of the percentage shall be computed on "the market value established as of the date of the default", this clause indicates on its face that the payment of this item is not based upon actual damage. The main element of damage, indeed the entire damage in the absence of special circumstances, is the difference between the contract price and the market value. Under this clause, penalties would be awarded against a defaulting seller, even if the market value at the time of default proved to be less than the contract price. The formula for computing the penalty in this contract does not take account of contract price, nor of difference between contract price and market value, and may be awarded to a purchaser who has actually been benefited by a seller's breach of contract, which would occur in event of a drop in the market.
It is not an answer that the arbitrators are probably reasonable men, and will probably do what is right between the parties. This question is one of power. Sometimes arbitrators are unreasonable men or abuse power. Since it is forbidden to courts to go behind arbitration awards where there has been an arbitrable dispute, it cannot be ascertained by courts whether arbitrators actually did relate such a penalty to any loss or damage actually sustained. Nothing in the contract required them to do so. It could never be verified whether arbitrators have acted under such a clause because they disliked the manner in which the party to be charged has conducted himself, or desired to impose some form of discipline in regulating the industry, or from some other irrelevant reason. That would be *870 true, even if the contract left it to the discretion of the arbitrators to decide whether any penalty should be imposed. Here, if the market dropped, but the seller was found in default, not only would the purchaser be freed from obligation to accept the goods, but would also be given an absolute right to at least 2% of the gross market value of the goods subject to the contract. Even if the market did not depreciate, a percentage must be awarded under the language of this agreement, regardless of whether the market value of the goods proves to be greater or less than the contract price, and regardless of how much greater or less, or of whether any actual damage has been sustained.
The irrelevance of the formula to any actual loss or damage is demonstrated by the manner in which the arbitrators figured the item in this case. Their award shows that they determined the market value on the date of default to be $21,840, on which they computed a penalty of 2%, amounting to $436.80, making a total of $22,276.80, from which they deducted the contract price of $10,640, leaving a difference of $11,636.80, to which they added $101.50 cost of arbitration and notary fee, totaling the amount of the award in the sum of $11,738.30. They did, to be sure, make the penalty as small as possible and still comply with the verbiage of the agreement, but the computation of the penalty is based entirely upon market value, which stands in no ratio to damage sustained.
It is pointed out in the dissenting opinion by Mr. Justice COHN, at the Appellate Division, with ample citation of authority, that the law is settled that stipulated damages or penalties which are disproportionate to the loss sustained, or greater than the damages which may be estimated with reasonable certainty, are illegal and unenforcible, and that boards of arbitration may not give effect to void or illegal obligations.
Leaving the penalty to be fixed by arbitrators weakens rather than strengthens the position of respondent. Even if awarding the minimum percentage were not mandatory, and it had been left to the discretion of arbitrators to decide whether to award anything, their exercise of judgment is not confined to losses or expenditures which they deem actually to have been incurred. This provision purports to give to the arbitrators power to award anything from 2% to 10%, in their uncontrolled discretion. If the courts are denied power to enforce such claims as having been agreed to in terrorem, there is even greater reason for *871 denying such power to private arbitrators. They lack punitive authority. The question involved is far reaching. What was said by the Appellate Division is true that the difference between contract and market prices does not necessarily determine, if special circumstances are present, all of the damage which parties may sustain from breach of an executory contract of sale, and, if this contract had prescribed some reasonable standard which the arbitrators were directed to follow in allowing and in computing the amount, such as that they were to measure it by whatever extra loss or damage special circumstances might have caused to result from the breach, this item would not necessarily constitute a penalty. The Appellate Division, as it seems to me, interpolated such a provision into the agreement between these parties.
Instead of there being a presumption in favor of liquidated damages, "It has frequently been said that in determining the nature of the provision the construction is favored that a penalty rather than liquidated damages was intended" (Clark's New York Law of Damages, § 18, citing Ayers v. Houston, 193 App. Div. 145, 147; Hoag v. McGinnis, 22 Wend. 163, 165; Town of Wheatland v. Taylor, 29 Hun 70, 72, and Brodfeld v. Schlanger, 104 N. Y. S. 369). Although it is "the law of this state, as settled by this court, that where the language used is clear and explicit to that effect, the amount is to be deemed liquidated damages when the actual damages contemplated at the time the agreement was made `are in their nature uncertain and unascertainable with exactness, and may be dependent upon extrinsic considerations and circumstances, and the amount is not, on the face of the contract, out of all proportion to the probable loss'" (Curtis v. Van Bergh, 161 N.Y. 47, 52), no such intention is disclosed by the agreement in the instant case. In section 20 of Clark's New York Law of Damages, it is said that "If the agreed sum is designated eo nomine, as a `penalty,' the provision will ordinarily be construed as one for a penalty and not as liquidation of the damages," citing Small v. Burke (92 App. Div. 338), and Bagley v. Peddie (16 N.Y. 469, 471).
In view of the inability of courts to inquire into evidence before arbitrators having jurisdiction of a dispute, for the purpose of ascertaining what actuated them in deciding a controversy subject to arbitration, except in situations not relevant *872 here, and the disinclination of the courts to confide power to administer punishment to private individuals, except under limited conditions, and for the other reasons above stated, the judgment appealed from should be reversed, insofar as it awards a sum in addition to the damage between the market value and contract price of the goods subject to this executory agreement of sale. As was said by COWEN, J., in Hoag v. McGinnis (22 Wend. 163, 166, supra): "To allow of the use of penalties as damages, at the unlimited discretion of the parties, would lead to the most terrible oppression in pecuniary dealings." This difficulty is not eliminated by leaving the matter to the discretion of arbitrators.
The judgment of modification entered upon the order of the Appellate Division should be reversed, with costs, and the judgment of the trial court eliminating the penalty should be reinstated.