Leonard H. Sandler, J.
In this action to recover $2,000, submitted to the court on stipulated facts, the only issue presented is whether or not the amount sued for constitutes a penalty and is therefore unenforceable as contrary to public policy.
The controversy arises out of certain provisions in a collective bargaining agreement affecting the painting, decorating and paperhanging industry. The plaintiff is the joint industry board for that industry, composed of an equal number of employer and union representatives, set up under the collective bargaining agreement, and empowered to supervise various aspects of labor relations.
The defendant Kaplan is a businessman who entered into a collective bargaining agreement with the union on November 5, 1964.
The defendant International Fidelity Insurance Co. executed a bond in the sum of $2,000 as surety for Kaplan, a bond required by certain provisions of the agreement.
In addition to various provisions generally found in collective bargaining agreements, article XX of the agreement required the employer to contribute to a fund designed to afford employees a broad range of benefits including life, accident and health insurance, dental or optical care, vacation benefits and old age pensions. It was agreed that the employer would contribute to the fund a sum equal to 13% of the gross wages payable to his employees.
These contributions by the employer were described in the agreement as “ a consideration for the making of this Agreement ” “ and of its very essence ”, and “ failure by the employer to pay the amount due from him to the trustees shall be deemed a breach of the Agreement ”.
A provision of article VII (§ 1, [f]) required the employer to deposit with the Joint Industry Board “ cash, proper bond, or other security acceptable to the said Board” in amounts fixed in proportion to the employer’s payroll for the preceding year as follows:
*429 “ Payroll Deposit
0-$50,000 $2,000.00
$50,001-$100,000 $4,000.00
$100,001-and more $6,000.00”
The deposit is to be held “ in escrow by the Joint Industry Board as security for the faithful performance by the employer of the terms of the Agreement.”
The agreement further contains in article VTI (§ 1, [e]) the following language critical to the issue in this case. ‘ ‘ Every employer shall keep a complete set of books setting forth all business transactions . . . Such books, and all other records of the employer, shall be made available to the auditor of the Painting Industry Insurance Fund or the Joint Industry Board on the demand of either. In the event that an employer shall refuse or fail to make his records available to said auditor upon five (5) days written demand of the Painting Industry Insurance Fund or the Joint Industry Board, and the auditor so certifies ■to the Joint Industry Board, then the entire amount of the Employer’s escrow deposit or bond . . . shall forthwith become due and payable, and the Joint Industry Board shall apply and pay the same to the Painting Industry Insurance Fund to the credit of the Employer.”
It is not disputed that the auditor sought to examine the defendant’s books and records, was unable to do so within five days, or indeed at any time, and so certified to the Joint Industry Board. This lawsuit followed that certification.
It was further stipulated that defendant Kaplan would testify that a single job was done by him during the period in question involving only one employee subject to the agreement, that the job lasted for only two months, and that he has been out of business since that time.
Other stipulations presented sharp issues of fact that would require actual testimony for their resolution if the court found them legally material to the result.
Thus it was stipulated that plaintiff’s records would reveal that there had been no payments whatever to the fund by the employer; but it was also stipulated that the defendant Kaplan would testify to making all the required payments.
Second, it was stipulated that Kaplan would have testified that after receiving the auditor’s letter he telephoned the Joint Industry Board, spoke to someone named Frank, and that Frank told him he need not submit his books and records for an audit. Plaintiff denied that Kaplan had ever been authorized not to submit his records, and it seems too clear for extended discus *430 sion that the agreement could not effectively be nullified orally by an unidentified person whose very connection with the plaintiff is unclear and whose authority to set at naught an integral part of an industry-wide agreement was not even remotely suggested.
In considering whether the provisions described above and in issue here are enforceable as liquidated damages or must be stricken down as a penalty, an appropriate starting point is the formulation of the accepted rules in the Restatement, Contracts (§ 339, headed “Liquidated Damages and Penalties.”): “ (1) An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach unless (a) the amount so fixed is a reasonable forecast of just compensation fbr harm that is caused by the breach, and (b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation. ’ ’
Turning first to the requirement in paragraph (b) of subdivision (1) above, I see no reason to doubt that the harm to be anticipated upon breach was indeed difficult here to estimate in advance. Obviously the agreement reflected a judgment based upon abundant experience that the employers’ contributions could not be effectively enforced without access to detailed books and records. It was evidently recognized that no reliable estimate of the amount due from an employer could be made without such records.
As to whether or not the deposits fixed represented reasonable forecasts of just compensation for the harm to be caused by a breach, a much closer question is no doubt presented. On balance, however, I am persuaded that the contract provision here does comply with that standard as well.
Defendant Kaplan was required to deposit $2,000 since his payroll for the preceding year was $50,000 or less. If his entire payroll for the year had been only $16,000, then $2,000 would be the precise amount .required as his fund contribution.
An estimate of damages so moderate in relation to the employer category involved can scarcely be viewed as ‘ ‘ excessive or unconscionable ”. (Perma-Stone Bi-County Corp. v. Ackerman, 15 Misc 2d 640, 641 [Sup. Ct., Kings, 1959], affd 8 A D 2d 731 [2d Dept., 1959.]) Rather it is persuasive confirmation that the purpose of the parties was to fix an amount reasonable in relation to the loss to be anticipated.
The rule is firmly established that the reasonableness of the estimate of damage is usually to be interpreted as of the date of the agreement, “ not as of the date of its breach.” (14 N. Y. *431 Jur., Damages, § 157 ; Kelly v. Board of Educ., 8 Misc 2d 1007 [Sup. Ct., Kings, 1957], affd. 7 A D 2d 856 [2d Dept., 1959], affd. 8 N Y 2d 764 [1960].) In this connection then, Kaplan’s claim that he had only one job, that it involved a single employee, that it was of short duration and even that he has paid what he owed the fund for that job, is not legally significant.
The justification for this rule seems particularly clear when the breach consists of withholding records critical to an objective determination of that which the breaching party now asserts without fear of objective refutation.
Having concluded that the provision is a valid one under traditional rules of law, I must add my view that these rules seem to me of dubious relevance to agreements of the kind before the court.
Surely an industry-wide collective bargaining agreement presents considerations not sensibly disposed of on the basis of rules shaped to meet altogether different kinds of problems. (See McCormick, Damages [1935], § 147.) Implicit in such agreements is a basic equality of bargaining power and ordinarily an opportunity for painstaking and meticulous consideration of the terms of the contract. The power to enforce compliance with such agreements without recourse to work disruptions may be of critical importance to the health of an entire industry, and a contract provision which makes that more likely is emphatically in the public interest.
I am by no means persuaded that this approach is presently foreclosed by the decision of a closely divided Appellate Division in Matter of Publishers Assn. v. Newspaper & Mail Deliverers (280 App. Div. 500 [1st Dept., 1952]). That decision may well have turned on the majority’s concern that it would be dangerous to sustain the power of arbitrators to impose penalties under contracts which fixed no upper limits on the penalty that may be imposed. (Cf. Matter of Mencher [Geller & Sons], 276 App. Div. 556 [1st Dept., 1950].)
In any event, I am not here required to determine whether penalty provisions in collective bargaining agreements that are moderate in character, reasonable in relation to the ends sought, and designed to insure contract compliance in a way that promotes labor peace may properly be sustained.
For the reason stated above I am satisfied that the provisions in issue here represent a valid and reasonable effort to liquidate damages.
Accordingly, judgment is to be entered for the plaintiff for $2,000 against both defendants, with interest from June 14, 1966.