Chief Judge Breitel (dissenting).
The order of the Appellate Division should be reversed and the arbitrators’ award vacated. The so-called “liquidated damage” provision of the agreement between Associated General Contractors and Savin Brothers prescribed a penalty. Imposition of a penalty for breach of an agreement violates a strong public policy. Although mistake of law or fact will not permit vacatur of an arbitrator’s award, where an award, if enforced, would result in violation of public policy, it should be vacated.
Associated General Contractors is a national trade association in the construction industry. One of its purposes is to negotiate, on behalf of its employer-members, collective bargaining agreements with trade unions. Savin Brothers, Inc. is an employer-member. In 1972, the relevant period, Savin was constructing for the State an arterial highway in the City of Albany.
Savin had been a member of Associated since 1958. Pursuant to a by-law of Associated, Savin had executed a Designation of Bargaining Agent agreement with the association, in *960 which Savin appointed the association its exclusive bargaining agent. The agreement provided for arbitration of alleged "breache[s of] its obligations under this agreement”, and that, if the arbitrators should find that Savin "has violated its obligations”, the arbitrators "shall award damages to the AGC in an amount no less than three (3) times the daily liquidated damage amount provided for in each such heavy and highway construction contract to which [Savin] is a party within the geographic area of the applicable labor contract or contracts negotiated by AGC for each such day the firm complained of is found by the arbitrator to have been in violation of its obligations under this Designation of Bargaining Agent form together with such other and further damages as the arbitrator in his discretion may determine.” The agreement was stated to be binding upon Savin as long as it remained a member of Associated. Pursuant to by-law of Associated, no member could withdraw until it gave at least 30 days’ notice before the beginning of collective bargaining negotiations. No such notice could be given during negotiations, and none was given prior to the negotiations described below.
On March 31, 1972, a collective bargaining agreement, negotiated by Associated with the Teamsters Union, expired. On the following day, the teamsters called a strike, which lasted until June 2, 1972. Negotiations between Associated and the teamsters continued during the strike.
On May 5, 1972, Savin, critical of the lack of progress of the labor negotiations, signed a separate one-year agreement with the union. On May 15, 1972, Associated notified Savin that it had breached its obligations and demanded arbitration. On May 17, 1972, Savin notified Associated that it was resigning as a member of the association effective immediately.
Following a hearing, the arbitrators held that Savin was in violation of the agreement for 58 days, from May 5 to July 2, 1972, and, in accordance with the formula in the agreement, awarded Associated $104,400 as "liquidated damages”. Associated moved at Special Term to confirm and Savin moved to vacate the award. The motion to confirm was granted. Both the arbitrators and Special Term held that the "liquidated damage” provision was reasonable and did not prescribe a penalty. The Appellate Division affirmed, two Justices dissenting. Although the court was unanimously of the view that the "liquidated damage” provision prescribed a penalty, it nevertheless permitted enforcement of the penalty on the ground *961 that the public policy favoring arbitration outweighed the public policy against enforcing penalties.
As the Appellate Division unanimously agreed, the "liquidated damage” provision obviously imposed a penalty. The rule was restated in Ward v Hudson Riv. Bldg. Co. (125 NY 230, 235): "If it shall * * * appear that the damage and loss, which may be presumed to result from non-performance, are uncertain and incapable of exact ascertainment, then the payment or liability fixed by them must be deemed to be liquidated damages and recoverable as such. Where, however, a sum has been stipulated as a payment by the defaulting party, which is disproportionate to the presumable or probable damage, or to a readily ascertainable loss, the courts will treat it as a penalty and will relieve; on the principle that the precise sum was not of the essence of the agreement, but was in the nature of a security for performance.” (See, also, Restatement, Contracts, § 339; 5 Williston, Contracts [3d ed], § 775A, p 657.)
The instant provision authorizing three times the daily liquidated damages provided in Savin’s construction agreements in the geographic area for which Associated negotiated labor agreements, "together with such other and further damages as the arbitrator in his discretion may determine”, prescribes a penalty according to the standards of Ward v Hudson Riv. Bldg. Co. (supra). There is no ascertainable relationship between the damage to Associated caused by a member’s breaches, and the daily liquidated damages payable by the member in the event of a breach of each of its construction agreements in the geographical area. The penalty is aggravated, especially when the liquidated damages are arbitrarily multiplied threefold. As was correctly noted by the Appellate Division, the "liquidated damage” provision was, of course, intended to be a deterrent, but designed as a penalty without relationship to damage sustained and then trebled.
An agreement which prescribes a penalty, without statutory authority, is violative of public policy and unenforceable (see, e.g., City of Rye v Public Serv. Mut. Ins. Co., 34 NY2d 470, 473; Mosler Safe Co. v Maiden Lane Safe Deposit Co., 199 NY 479, 485; Ward v Hudson Riv. Bldg. Co., 125 NY 230, 235, supra). The strong policy considerations underlying the rule are based upon the incompatibility of penalties with the compensatory nature of damages for breach of an agreement, and an aversion to enforce harsh, unequal bargains. Thus, in Ward v Hudson Riv. Bldg. Co. (125 NY 230, 235, supra), the *962 court stated that a penalty "was not of the essence of the agreement, but was in the nature of a security for performance” (see, also, 5 Williston, Contracts [3d ed], § 776, p 668; 5 Corbin, Contracts, § 1057; Loyd, Penalties and Forfeitures, 29 Harv L Rev 117, 125). Most important, as noted long ago in Hoag v McGinnis (22 Wend 163, 166), "To allow of the use of penalties as damages, at the unlimited discretion of the parties, would lead to the most terrible oppression in pecuniary dealings” (see Matter of Publishers’ Assn. [Newspaper Union], 280 App Div 500, 504; see, also, Restatement, Contracts, § 339, Comment on Subsection [1], par a, p 552; McCormick, Damages, § 147; Loyd, Penalties and Forfeitures, 29 Harv L Rev 125-126).
True, arbitrators generally are not bound by principles of substantive law or rules of evidence, and thus error of law or fact will not justify vacatur of an award (see Matter of Associated Teachers of Huntington v Board of Educ., 33 NY2d 229, 235, and cases cited). The immunity of arbitration awards to judicial review of such errors for that very reason mandates preclusion of violations of strong public policies by arbitrators in the arbitration process. Where, therefore, an award would enforce an illegal agreement or one violative of public policy, the courts will vacate it (see Matter of Associated Teachers of Huntington v Board of Educ., 33 NY2d 229, 235-236, supra, and cases cited; Matter of Western Union Tel. Co. [American Communications Assn.], 299 NY 177,187; Matter of East India Trading Co. [Halari], 280 App Div 420, 421, affd 305 NY 866; see, also, McLaughlin, 1968 Supplementary Practice Commentary to CPLR 7501, McKinney’s Cons Laws of NY, Book 7B, 1974-1975 Supp, p 154). Since enforcement of a penalty would violate public policy, an arbitrator’s award which enforces a penalty provision should be vacated (Matter of Publishers’ Assn. [Newspaper Union], 280 App Div 500, 504-506, supra; see Matter of East India Trading Co. [Halari], 305 NY 866, 872, [Van Voorhis, J., dissenting]; Domke, Commercial Arbitration, § 33.03; cf. 8 Weinstein-Korn-Miller, NY Civ Prac, par 7510.07; but see Fleming, Arbitrators and the Remedy Power, 48 Va L Rev 1199, 1209; Note, Judicial Review of Arbitration: The Role of Public Policy, 58 Nw U L Rev 545, 554-555; Comment, The Enforceability of an Arbitrator’s Award of a Penalty, 52 Col L Rev 943, 945; contra, Wagner v Russeks Fifth Ave., 30 Misc 2d 127, 128). Thus, the award penalizing Savin for breach of the Designation of Bargaining Agent agreement should be vacated.
*963 To be sure, the law strongly favors the arbitration of private disputes, as it favors peaceful collective bargaining. Arbitration furnishes an easy, expeditious and inexpensive method of settling controversies, preventing litigation, and avoiding industrial strife. The public policy rejecting the use of private penalties is a strong one, too, for reasons rooted in the past and still relevant. Penalties, especially if the parties should be of unequal bargaining power, are susceptible of grave abuse. Even in the collective bargaining area where trade associations and trade unions may occasionally occupy overbearing power and share in collusive application of that power, sometimes in corrupt or "sweetheart” arrangements, the peril of grave abuse is particularly present.
It is no answer to say that enforcement of "less severe” penalties would not violate public policy and thus should be enforced. By definition, penalties are "disproportionate” to the actual harm caused by the breach, and the drawing of the line between less severe and more severe penalties may not be left in the hands of private adjudicators subject to no judicial or other review.
In taking this view I am not unaware and indeed am deeply sympathetic to the benign and important benefits achieved both by the arbitration process and collective bargaining between associations of employers and employees. But I am also deeply concerned with the long history of abuse in those relationships between trade associations of less than impeccable quality and with corrupted trade unions, particularly in certain fields of enterprise. It takes a very short memory not to recall whole industrial pyramids of trade associations, compliant impartial chairmen functioning as arbitrators, and collusive employees’ organizations unfaithful to their members. To give such pyramids unreviewable power to impose penalties without let or hindrance is dangerous, although I am sure that statutory regulation, or labor board review or control of such devices, might be useful and would provide a way of meeting the unquestioned need for reasonable "penalties” or "liquidated damages” where proof of actual damages is too difficult or impossible.
The award should be vacated since the arbitration clause in the controlling agreement is invalid as in violation of public policy.
Accordingly, I dissent, and vote to reverse.
*964 Judges Jones, Wachtler, Fuchsberg and Cooke concur in Per Curiam opinion; Chief Judge Breitel dissents and votes to reverse in a separate opinion in which Judges Jasen and Gabrielli concur.
Order affirmed, with costs.